**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

IN RE OPENAI COPYRIGHT
INFRINGEMENT LITIGATION

MDL No. 3143

**DMCA PLAINTIFFS' RESPONSE TO OPENAI'S MOTION FOR TRANSFER OF**
**ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR**
**CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................................1

II.   **BACKGROUND** ...............................................................................3

III.  **ARGUMENT** ....................................................................................6

     A.  **Because the DMCA Cases involve different factual and legal issues from the others, consolidating them would cause unnecessary complications and delay**..........6

     B.  **OpenAI's reasons for consolidation lack merit** ................................................8

         1.  **The DMCA Cases lack meaningful factual similarity with the others** ...................8

         2.  **Consolidation is premature and will grant OpenAI no relief** ................................9

         3.  **OpenAI's "inconsistent rulings" rationale is illusory**.............................................10

     C.  **Any consolidation of the DMCA Cases should be limited to the Consolidated News Cases, and whatever centralization occurs should take place in the Southern District of New York** ........................................................13

IV.  **CONCLUSION** ...............................................................................13

## <u>TABLE OF AUTHORITIES</u>

*Page*

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ...................9, 11

*California v. Carney*, 471 U.S. 386 (1985)...................................................................................11

*In re Auryxia (Ferric Citrate) Pat. Litig.*, 412 F. Supp. 3d 1347 (J.P.M.L. 2019) .......................12

*In re Coll. Athlete Comp. Antitrust Litig.*, 730 F. Supp. 3d 1378
(U.S. Jud. Pan. Mult. Lit. 2024)................................................................................................10, 12

*In re Ivy*, 901 F.2d 7 (2d Cir. 1990)...............................................................................................9

*In re: LVNV Funding, LLC, Time-Barred Proof of Claim Fair Debt Collection Pracs. Act
(FDCPA) Litig.*, 96 F. Supp. 3d 1376 (U.S. Jud. Pan. Mult. Lit. 2015) .......................................11

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) .............................................................................12

**Statutes**

17 U.S.C. § 1202(b)(1) ....................................................................................................................6

**Other Authorities**

Individual Rules of Practice – Hon. Jed S. Rakoff (June 3, 2024) ..................................................8

Sup. Ct. R. 10(a) .............................................................................................................................11

## I.    INTRODUCTION

The DMCA Plaintiffs—Raw Story Media, Inc., AlterNet Media, Inc., and The Intercept Media, Inc.—oppose OpenAI's motion to transfer their cases under 28 U.S.C. § 1407.  As other parties explain, consolidation makes little sense in general, not least because OpenAI has admitted that the main reason it seeks consolidation—avoiding duplicative discovery—will be largely moot by the time the Panel decides its motion: its employees already will have sat for depositions that it wants to avoid.  ECF No. 5 at 2.  Plus, it rings hollow for an organization at the forefront of a new and disruptive industry (valued at more than $150 billion) to claim harm from having to defend itself in merely two jurisdictions against a small handful of cases asserting largely different claims. Racing to get to scale before its competitors, and apparently determined to worry about the consequences later, OpenAI violated the rights of all sorts of plaintiffs in all different kinds of alleged ways.  There is no good reason why an MDL for the resulting disparate claims makes any particular sense.

Consolidating the DMCA Cases would make the least sense of all.  Unlike any of the other cases, which involve copyright infringement claims, the DMCA plaintiffs each assert a single claim under the Digital Millennium Copyright Act for unlawful removal of copyright management information.  Apart from the Consolidated News Cases, none have DMCA claims at all, and most have complex class issues.

The DMCA cases are also on very different tracks for resolution, with at least one DMCA case likely ready for trial before Judge Rakoff later this year. According to OpenAI itself, discovery in the DMCA Cases is likely to be narrowly targeted, and significantly less involved than the copyright infringement cases.  Thus, OpenAI's proposal guarantees nothing but delay and difficulties for both the DMCA Cases and the others.

None of OpenAI's arguments overcome these reasons to deny consolidation.  First, OpenAI argues that supposed common issues among the cases will create efficiencies.  But according to OpenAI's discovery position, the DMCA Cases have little in common with the others. OpenAI emphasizes the fair use defense, yet in contrast to copyright infringement, OpenAI has not established the applicability of that defense under the DMCA.  And even if it were relevant, the differences among the works underlying the varying cases, and the relevant markets, may present different fair use analyses that would not benefit from consolidation.  OpenAI has not shown anything to the contrary.

Second, OpenAI says that consolidation is needed to avoid duplicative discovery because informal coordination has failed.  But beyond being moot as discussed above, the argument is unfounded.  OpenAI does not claim even to have discussed informal coordination between the DMCA Cases and the others, and rejected the DMCA Plaintiffs' own attempts at informal coordination of document discovery, which discussions remain ongoing.

Third, OpenAI adverts to the prospect of inconsistent rulings, including a supposed inconsistency between the two DMCA Cases. But while it is true that Judges McMahon (in *Raw Story*) and Rakoff (in *Intercept*) reached different conclusions on standing, and though the DMCA Cases ***started*** from similar complaints, OpenAI omits a critical fact: Judge Rakoff upheld standing based on a substantially revised amended complaint, while Judge McMahon based her decision on the initial version.  So there is no inconsistency. In any event, inconsistencies are generally resolved by appeal, not transfer, and the MDL process was not created to give parties a second bite at the district court apple.

In sum, no sound reason exists to remove the DMCA Cases from the judges most familiar with them—including the one judge to have already ruled against OpenAI on a dispositive motion.

But if the Panel sees benefit in including the DMCA Cases in a consolidation plan, it should combine them only with the Consolidated News Cases, the only other cases to feature DMCA claims, and do so in the Southern District of New York, where they were all filed.

## II.    BACKGROUND

The DMCA Plaintiffs begin by providing the Panel with the background pertaining to the DMCA Cases.[1]

On February 28, 2024, the DMCA Plaintiffs, all online news organizations, filed two complaints in the Southern District of New York, represented by the same counsel at Loevy + Loevy.  One, *Raw Story Media, Inc. v. OpenAI, Inc.*, was a single-count complaint against OpenAI asserting violations of 17 U.S.C. § 1202(b)(1).  ECF No. 1-24 at 35-46.  The other, *The Intercept Media, Inc. v. OpenAI, Inc.*, asserted violations of 17 U.S.C. § 1202(b)(1) and 17 U.S.C. § 1202(b)(3) against both OpenAI and Microsoft.  ECF No. 1-25 at 34-47.  Neither case asserts copyright infringement under 17 U.S.C. § 501 or any other claim.  As to the Section 1202(b)(1) claims, the two complaints were similar to each other.

The cases were assigned to Judges McMahon (*Raw Story*) and Rakoff (*Intercept*), after Judge Stein declined to find them related to *The New York Times Company v. Microsoft Corp.*, which had been filed in the Southern District of New York two months prior.  ECF No. 1-24 at 20-21; ECF No. 1-25 at 20-21.  Though they shared some of the same defendants and legal theories, there is nothing particularly unusual about that circumstance, and Judges McMahon and

---

[1] To avoid unnecessary repetition, the DMCA Plaintiffs focus on the background as it pertains to the DMCA Cases.  The Consolidated News Plaintiffs' brief contains a fuller description of the broader context.  Undersigned counsel have signed that brief as attorneys for one of the Consolidated News Plaintiffs—The Center for Investigative Reporting—and the DMCA Plaintiffs endorse that description.

Rakoff then jointly determined that the DMCA Cases were not even sufficiently related to each other to require any relief.  ECF No. 1-7.

Defendants moved to dismiss the two cases under Fed. R. Civ. P. 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim.  ECF No. 1-24 at 28; ECF No. 1-25 at 24-25. Judge Rakoff held oral argument on the *Intercept* motions.  He then issued an order that neither granted nor denied the motions, but gave The Intercept leave to replead and ordered supplemental briefing on the amended complaint.  Topic Decl. Ex. 1.  The Intercept repleaded by adding significantly more allegations on both standing and the merits.  Topic Decl. Ex 2 ¶¶ 34-36, 40-61, 63-64, 66-67, 77-79, 81, 86.  The parties filed supplemental briefs, and Judge Rakoff conducted a second oral argument.  Then, on November 21, he issued a bottom-line ruling denying OpenAI's motion as to The Intercept's Section 1202(b)(1) claim against it while dismissing the other claims with prejudice.  *See* Topic Decl. Ex. 3.  The ruling indicated that a full opinion would follow, and it is still forthcoming.  OpenAI answered the amended complaint on December 5, 2024.  *See* ECF No. 1-25 at 33.

Shortly before Judge Rakoff issued his decision, Judge McMahon dismissed the *Raw Story* complaint on standing grounds.  Her ruling was based on the initial version of the *Raw Story* complaint, which resembled the initial version of the *Intercept* complaint on which Judge Rakoff issued no decision.  *See* ECF No. 1-24 at 33.

Judge McMahon's dismissal was without prejudice, as she also permitted the *Raw Story* plaintiffs to move for leave to amend.  *See* ECF No. 1-24 at 33.  The *Raw Story* plaintiffs promptly filed such a motion and sought leave to amend their complaint to bring it in line with the *Intercept* allegations, adding still further allegations supporting an independent standing theory that was

- 4 -

never raised in *Intercept*. *See generally* Topic Decl. Ex. 4.[2]  Judge McMahon granted OpenAI's motion to extend the briefing on that motion, which is set to conclude on January 20, 2025.  ECF No. 1-24 at 34.

The DMCA Cases are also in different stages of discovery.  Judge McMahon allowed discovery to take place while the *Raw Story* motion to dismiss was pending.  ECF No. 1-24 at 24. The parties began discovery in April and conducted written discovery until Judge McMahon dismissed the case, with document production underway but incomplete.  Topic Decl. ¶ 9.  To streamline matters, the *Raw Story* plaintiffs served a request for production seeking documents produced in other cases against OpenAI involving DMCA claims and copyright infringement, including the Consolidated News Cases.  OpenAI refused to produce any documents because, *inter alia*, the documents in other cases were supposedly irrelevant.  Topic Decl. Ex. 5 at 20 (RFP No. 26).  OpenAI does not claim to have suggested informal coordination between the DMCA Cases and any of the other cases it seeks to consolidate (apart from between the two DMCA Cases).  The *Raw Story* plaintiffs are amenable to informal coordination once discovery resumes.

Judge Rakoff, meanwhile, stayed discovery pending his adjudication of the *Intercept* motions and has not yet lifted that stay.  Topic Decl. ¶ 11.  Given the stay and the pending motions to dismiss, there was no occasion until recently for the parties in the DMCA Cases to discuss discovery at all, including the prospect of informally coordinating with other cases.  After OpenAI answered the amended complaint, The Intercept initiated discussions on discovery, suggesting that the parties seek a Rule 16 conference and a lifting of the stay.  OpenAI responded that it was largely premature to even confer about discovery until after Judge Rakoff issued his full opinion

---

[2] This exhibit is a redline between the *Raw Story* complaint and the proposed amended complaint. The new standing theory is supposed by allegations at paragraph 95.

but offered to cross-produce documents from *Raw Story*.  The Intercept suggested a cross-production with the Consolidated News Cases, and OpenAI rejected that proposal because the cases supposedly have a "differing scope."  *See generally* Topic Decl. Ex. 13.  Discussions about other aspects of coordinated discovery remain ongoing.  *See id*.  Like the *Raw Story* plaintiffs, The Intercept is amenable to informal coordination of discovery.

## III.     ARGUMENT

### A.     Because the DMCA Cases involve different factual and legal issues from the others, consolidating them would cause unnecessary complications and delay.

Consolidating the DMCA Cases with the others will cause needless delay for all involved. This is for three reasons.

First, because they involve DMCA claims, the DMCA Cases will require discovery and adjudication of DMCA-specific issues that will not arise in the New York Consolidated Class Action, the California Consolidated Class Action, or the California YouTube Class Action, which do not assert any such claims.  *See generally* ECF Nos. 1-14, 1-17 1-18, 1-20 1-21, 1-22, 1-23, 1-24, 1-25.

A DMCA claim under Section 1202(b)(1) requires the plaintiff to prove four elements: (1) the plaintiff conveyed copyright management information ("CMI") in connection with a copyright-protected work, (2) the defendant removed the CMI, (3) it did so intentionally, and (4) it had actual or constructive knowledge that such removal would induce, enable, conceal or facilitate infringement.[3]  17 U.S.C. § 1202(b)(1).  No other claim requires proving any of these elements.

Proving the DMCA elements, moreover, requires addressing factual issues that will likely be irrelevant to any of the other claims.  For instance, the DMCA Plaintiffs will need to discover

---

[3] The Intercept also asserted claims under Section 1202(b)(3), which concerns distribution of works from which CMI has been removed.  Because Judge Rakoff dismissed those claims with prejudice, they are unlikely to benefit from coordination.  *See* Topic Decl. Ex. 3.

whether and how OpenAI decided to remove discrete types of information—author, title, copyright notice, and terms of use—from their copyright-protected news articles. This may require discovery into the computer algorithms OpenAI applied to news content after scraping it from the internet but before using it to train ChatGPT, and may require expert testimony on these facts.

As to the fourth element, the DMCA Plaintiffs will need to establish the relation between OpenAI's removal of CMI and a potential concealment or abetting of infringement. Whether the DMCA Plaintiffs plausibly alleged such a relation was (in addition to standing) the most hotly contested issue at the dismissal stage and is likely to involve fact issues irrelevant to any non-DMCA claim. For instance, the DMCA Plaintiffs will need to take discovery into the relative cost of removing CMI from training data versus certain types of large language model training, and how removing CMI from articles in the training sets affects ChatGPT's outputs. No other claim in any of the cases appears to implicate these issues. There is no reason to saddle the other cases with them.

Second, plaintiffs in the other cases have raised nine sets of claims that the DMCA Plaintiffs do not: direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, unfair competition under California law, unjust enrichment, unfair and deceptive business practices under Massachusetts law, unfair competition under New York law, trademark dilution, and dilution and injury to business reputation under New York law. *See generally* ECF Nos. 1-14, 1-17 1-18, 1-20 1-21, 1-22, 1-23. Many of these claims, too, will likely require extensive discovery on issues irrelevant to the DMCA Cases. That discovery, plus related adjudication, will cause the DMCA Cases to experience needless delay themselves.

Third, most of the other sets of cases—the New York Consolidated Class Action, the California Consolidated Class Action, and the California YouTube Class Action—are putative

class actions that present class action-specific issues absent from the DMCA Cases.  They also do not subsume the DMCA Cases because they do not assert any DMCA claims.  And litigating class action-specific issues will likewise add substantial delay to the DMCA Cases.  In the Consolidated California Class Action, for example, class certification motions will not be fully briefed until December 22, 2025, ECF No. 1-14 at 43, and in both jurisdictions such motions take nearly half a year to decide.  *See* Topic Decl. ¶ 14.

The DMCA Cases, in contrast, will likely be resolved well before that.  For instance, before discovery was stayed, the *Intercept* parties proposed to be ready for trial within eleven months of the Rule 16 conference.  Topic Decl. ¶ 12.  On that schedule, the *Intercept* case very well might be tried before the class actions even have a class.  And that is all the more likely given Judge Rakoff's individual rules providing for a five-month default ready-for-trial date, and his rejection of eleven months as too long here.  *Id*.; Individual Rules of Practice – Hon. Jed S. Rakoff, at 5 (June                                    3,                                    2024), https://www.nysd.uscourts.gov/sites/default/files/practice_documents/JSR%20Rakoff%20Rules %20Update%202024-06-03.pdf.  Consolidating the DMCA Cases with the others will therefore engender needless delay that prejudices all parties, especially the DMCA Plaintiffs.

**B.    OpenAI's reasons for consolidation lack merit.**

OpenAI offers three main reasons to consolidate the cases against it.  They do not come close to outweighing the reasons against consolidation.

**1.    The DMCA Cases lack meaningful factual similarity with the others.**

OpenAI argues that the cases share factual similarities.  It points to two.  First, it observes that each case will require the plaintiff to establish that OpenAI trained ChatGPT on the plaintiff's works.  ECF No. 1-1 at 12.  But it identifies no meaningful way this similarity would benefit from consolidation.  And it would not.  OpenAI will need to independently search its training sets for

references to each plaintiff's works, and this issue will largely be addressed through document productions of those works as they appear in OpenAI's training sets.  Further, OpenAI has already made such a production in *Raw Story*, eliminating any potential need for consolidation on that issue and proving that consolidation is unnecessary for it.  Topic Decl. Ex. 8 ¶¶ 59-60.

Second, OpenAI argues that each case will require the court to address fair use.  ECF No. 1-1 at 13-14.  As the Consolidated News Plaintiffs' brief explains, fair use is a fact-specific issue that may well differ markedly across the cases given the distinctions in the underlying works, the relevant markets, and the like.  *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527 (2023) ("Fair use is a flexible concept, and its application may well vary depending on context.") (cleaned up).  Thus, the cases could well have little in common as to fair use.  Beyond that, OpenAI has cited no authority, including in its dispositive motions, holding fair use to be relevant to a DMCA claim, and it is unclear whether that defense will play any part in an eventual summary judgment decision.  This Panel is in no position to adjudicate that merits question.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case.").  So fair use provides no reason to consolidate the DMCA Cases with the others.[4]

### 2.     Consolidation is premature and will grant OpenAI no relief.

OpenAI argues that consolidation is necessary to limit supposedly duplicative discovery, especially depositions.  ECF No. 1-1 at 14-15.  But OpenAI has conceded that consolidation will grant it no relief from the supposed burdens of multiple depositions.  It said as much in its Motion

---

[4] OpenAI says that the DMCA cases "effectively assert copyright infringement."  ECF No. 1-1 at 14 n.9.  This position directly contradicts its reason for refusing to cross-produce documents it disclosed in cases involving copyright infringement.  It refused on the ground that documents in copyright infringement cases are "not relevant" to the DMCA Cases "because Plaintiffs do not assert a copyright infringement claim."  Topic Decl. Ex. 5 at 20.

for Expedited Hearing (which the Panel denied), arguing that the Panel should hear its motion in January, because otherwise "the majority of these unnecessarily duplicative depositions will already have occurred by the time this Panel rules on the motion."  ECF No. 5 at 2.  So according to OpenAI itself, any relief is a mirage.

When applied to the DMCA Cases, OpenAI's argument also contradicts its position on document production.  It refused cross-production between the DMCA Cases and the Consolidated News Cases on the ground that the issues among the cases are purportedly too different.  Topic Decl. Ex. 5 at 20; Topic Decl. Ex. 6.  That entails that, to a significant extent, depositions in the DMCA Cases will not be unduly duplicative of those in the other cases.

Plus, centralization is a "last solution" where informal coordination has failed.  *In re Coll. Athlete Comp. Antitrust Litig*., 730 F. Supp. 3d 1378, 1379 (U.S. Jud. Pan. Mult. Lit. 2024).  And in the DMCA Cases, attempts at informal coordination have barely begun.  OpenAI complains that parties in some of the other cases have failed to reach agreement on coordination.  ECF No. 1-1 at 14-15.  But it does not claim to have even tried to coordinate any discovery between the DMCA Cases and the others.  More, there could be informal coordination both between the DMCA Cases themselves and with the Consolidated News Cases.  All DMCA Plaintiffs are represented by the same counsel at Loevy + Loevy, which also represents one of the Consolidated News Plaintiffs: The Center for Investigative Reporting.  Topic Decl. ¶ 4.  OpenAI is also represented by the same counsel.  Consolidation is unjustified for this reason, too.

### 3.  OpenAI's "inconsistent rulings" rationale is illusory.

OpenAI argues that consolidation is necessary to avoid inconsistent rulings, including those that have supposedly already emerged.  ECF No. 1-1 at 16-17.  It is wrong on multiple grounds.

- 10 -

OpenAI proffers nothing but the possibility of inconsistent rulings on broad legal issues, such as Article III standing under the DMCA or whether the fair use defense allows creators of large language models to train those models using various content found on the internet.  *See id*. But that argument proves too much: if that sufficed for consolidation, then we would have no need for appellate courts.  The Courts of Appeal can resolve any inconsistencies among courts in their Circuits, and for any appellate inconsistencies, we have the Supreme Court.  *See, e.g.*, *In re: LVNV Funding, LLC, Time-Barred Proof of Claim Fair Debt Collection Pracs. Act (FDCPA) Litig*., 96 F. Supp. 3d 1376, 1378 (U.S. Jud. Pan. Mult. Lit. 2015) (rejecting "inconsistent rulings" rational because "[a]ny inconsistent rulings with respect to this or other legal issues in these actions can be resolved on appeal"); *see also* Sup. Ct. R. 10(a) (providing for certiorari jurisdiction to resolve conflicts between Courts of Appeal on important federal questions).

This argument is even unfounded on its own terms.  OpenAI argues for the importance of consistency in rulings on fair use, which it says "may chart the course for artificial intelligence development in coming years."  ECF No. 1-1 at 16.  But courts might reach different results on that question not due to inconsistencies in their approaches, but to critical factual distinctions among the cases bearing on the "flexible" concept of fair use.  *Warhol*, 598 U.S. at 527.  For example, even if courts in the Consolidated YouTube Class Action were to accept the fair use defense and the DMCA Cases were to reject it, that could simply reflect dispositive differences between YouTube videos and news articles, and the relevant markets.  And if anything, the importance of the fair use question suggests that our system could benefit from careful thinking by different judges on the complex issues they present.  *See California v. Carney*, 471 U.S. 386, 400-01 (1985) (Stevens, J., dissenting) ("To identify rules that will endure, we must rely on the state and lower federal courts to debate and evaluate the different approaches to difficult and

unresolved questions of constitutional law.  Deliberation on the question over time winnows out the unnecessary and discordant elements of doctrine and preserves 'whatever is pure and sound and fine.'") (quoting B. Cardozo, The Nature of the Judicial Process 179 (1921)) (footnote omitted).[5]

Indeed, so weak is OpenA's "inconsistencies" argument that the only example it identifies so far is based on incorrect facts.  It points to the different conclusions Judges McMahon and Rakoff reached on standing under the DMCA.  ECF No. 1-1 at 16-17.  But it omits that Judge McMahon found no standing based on a materially different complaint than the one Judge Rakoff adjudicated.  *See* Section II, *supra*.  As before, these rulings likely reflect differences in the operative allegations, not inconsistencies in the court's application of the law.  *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring) ("Other cases presenting different allegations and different records may lead to different conclusions.").

OpenAI also observes that there might be inconsistent pretrial rulings.  ECF No. 1-1 at 16.  But that is no reason to transfer the DMCA Cases.  The courts in the DMCA Cases have not issued any pretrial rulings at all; indeed, the parties have not even engaged in any contested pre-trial motion practice.  It is thus far too premature to include the DMCA cases in any consolidation efforts.  *See In re Coll. Athlete Comp. Antitrust Litig.*, 730 F. Supp. 3d at 1379 (holding Section 1407 centralization should be a "last solution").

---

[5] To be sure, the prospect of inconsistent merits rulings can occasionally warrant centralization. But in the one case OpenAI cites for that proposition, the inconsistency involved a narrow question about the construction and validity of a single set of patents, not the broad legal questions OpenAI invokes here. *See In re Auryxia (Ferric Citrate) Pat. Litig.*, 412 F. Supp. 3d 1347, 1349 (J.P.M.L. 2019).

**C.** **Any consolidation of the DMCA Cases should be limited to the Consolidated News Cases, and whatever centralization occurs should take place in the Southern District of New York.**

To the extent the Panel concludes that the DMCA Cases should be consolidated to some extent, the only sensible approach would be to combine them with the Consolidated News Cases. Any centralization, moreover, should occur in the Southern District of New York.

The Consolidated News Cases are the only cases that bear any resemblance to the DMCA Cases. They are the only other cases with DMCA claims, and thus the only other cases with any real degree of overlap. And because both sets of cases concern copyright-protected news articles as opposed to other kinds of content (works of fiction, nonfiction books, YouTube videos, and the like), there will be more similarities among them as to fair use—assuming *arguendo* that fair use is relevant under the DMCA. Thus, if the Panel is inclined to consolidate the DMCA Cases with some set of cases, it should limit that effort to the Consolidated News Cases. The Southern District of New York would be the only proper forum, as all these cases were filed there and its judges are familiar with them.[6]

If, in the alternative, the Panel decides to centralize all the cases, it should do so in the Southern District of New York. As explained more fully in the Consolidated News Plaintiffs' brief, that jurisdiction is superior to the Northern District of California for multiple reasons.

## IV.   CONCLUSION

The Panel should deny OpenAI's motion, and should decline to centralize the DMCA Cases with any other cases. In the alternative, it should centralize the DMCA Cases with the

---

[6] The DMCA Plaintiffs do not take OpenAI to propose the logically possible alternative of consolidating the DMCA Cases only with each other. In any event, that would be unwarranted. *Raw Story* has been dismissed without prejudice, and it is therefore premature to consolidate it with *Intercept*, where discovery is soon set to begin. Further, these cases involve an identical set of counsel, suggesting that informal coordination—discussions of which are in their infancy—is likely to succeed.

Consolidated News Cases in the Southern District of New York.  If the Panel orders that all cases be centralized, it should do so in the Southern District of New York.

RESPECTFULLY SUBMITTED,

*/s/ Matthew Topic*

Jon Loevy
Michael Kanovitz
Matthew Topic
Stephen Stich Match

LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900 (p)
312-243-5902 (f)
jon@loevy.com
mike@loevy.com
matt@loevy.com
match@loevy.com

January 3, 2025