**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE OPENAI COPYRIGHT LITIGATION | MDL No. 3143 |

**BRIEF IN OPPOSITION TO OPENAI'S MOTION FOR TRANSFER OF ACTIONS
PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

    A.    The California Action ................................................................................................ 3

    B.    The Consolidated *Authors Guild* Action .............................................................. 4

    C.    The News Actions ...................................................................................................... 5

    D.    The *Raw Story* and *Intercept* DMCA Actions ..................................................... 6

    E.    The *YouTube* Action ................................................................................................. 7

    F.    Previous Efforts to Consolidate and Coordinate the California Action and the New York Actions ...................................................................................................... 8

      i.    OpenAI Opposed Earlier Efforts to Consolidate the Cases .................................. 8

     ii.    The Parties in the Northern District of California and the *Authors Guild* Actions Have been Coordinating Discovery ........................................................ 9

III. ARGUMENT .................................................................................................................... 9

    A.    OpenAI's Motion to Transfer Should Be Denied ................................................. 11

      i.    OpenAI has not Exhausted Alternatives to Centralization because It Has Resisted Coordination—until Now ...................................................................... 11

     ii.    Transfer of the OpenAI Copyright Actions Will not Serve the Convenience of the Parties and Witnesses or Promote the Just and Efficient Conduct of the Litigation ..................... 14

    B.    Should the Panel Order Centralization, the Northern District of California is the Most Appropriate Forum for Centralization ........................................................ 17

IV. CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Alteryx, Inc., Customer Data Security Breach Litig.*, 291 F. Supp. 3d 1377 (2018) ................................................................................................13, 14

*In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415 (J.P.M.L. 2023) ..................2, 11

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F Supp. 2d 1376 (J.P.M.L. 2011) ................................................................................11

*In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811 (J.P.M.L. 1980) .........................................10

*In re Comcast Corp. Emp. Wage & Hour Employment Pracs. Litig.*, 190 F. Supp. 3d 1344 (J.P.M.L. 2016) ................................................................................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379 (J.P.M.L. 2002) ................................................................................18

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978) ................................................................................12

*In re Juul Labs, Inc. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019) ................................................................................18

*In re Lithium Ion Batteries Antitrust Litig.*, MDL 2420, Case No. 4:13-md-2420 (N.D. Cal. 2012) ................................................................................18

*In re N.Y. Dep't of Corr. & Cmty. Supervision Medications with Abuse Potential Prisoner Litig.*, 709 F. Supp. 3d 1390 (J.P.M.L. 2023) ................................................12, 13, 14

*In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376 (J.P.M.L. 2009) .......................18

*In re Tex. Prison Conditions-of-Confinement Litig.*, 52 F.Supp.3d 1379 (J.P.M.L. 2014) ................................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, Case No. 3:07-md-1827 (N.D. Cal. 2007) ................................................................................18

*In re Transpac. Passenger Air Transp. Antitrust Litig.*, 536 F. Supp. 2d 1366 (J.P.M.L. 2008) ................................................................................18

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ................................................................15

*Matter of N.Y. City Mun. Secs. Litig.*, 572 F.2d 49 (2d Cir. 1978) .................................................9

**Federal Statutes**

17 U.S.C. § 501 ................................................................................................4, 5

17 U.S.C. § 1202 ..................................................................................... *passim*

28 U.S.C. § 1407(a) ...........................................................................................9, 10

**Other Authorities**

MANUAL FOR COMPLEX LITIG. (FOURTH) ....................................................................17

## I. INTRODUCTION

Many months ago, OpenAI already flip-flopped regarding coordination of the subject Action into a single jurisdiction. As early as November 2023, OpenAI advised of its intent to file a motion under the first-to-file rule to dismiss the consolidated *Authors Guild* Actions[1] pending in the Southern District of New York or to transfer it to the Northern District of California along with the other actions alleging copyright violations arising from OpenAI's use of copyrighted material without permission in its large language models. OpenAI, however, reversed course, and decided not to seek a stay or transfer of the *Authors Guild* Action. OpenAI's change of heart was the direct result of its failure to obtain the pretrial schedule it wanted in *In re OpenAI ChatGPT Litigation*, Case No. 3:23-cv-03223-AMO (N.D. Cal.) (the "California Action"). Now that the California and *Authors Guild* Actions are deep into discovery and with depositions imminent, OpenAI now flip-flops again and now is asking for the relief it could have had years ago. The Panel should decline its invitation.

Cases involving the unlawful and unauthorized use of authors' copyrighted material by Open AI in connection with its large language models are only pending in two jurisdictions: the Northern District of California and the Southern District of New York. After the Court presiding over the California Action entered a schedule it did not like, OpenAI decided it was better off litigating the cases in two jurisdictions rather than one, likely hoping the Southern District of New York would decide summary judgment in OpenAI's favor before the Northern District of California had the opportunity to do so. OpenAI declined the opportunity to join a first-to-file motion filed by the California Plaintiffs and instead opposed it, avoiding the very relief OpenAI now seeks from the Panel. In fact, OpenAI expressly rejected one of the key arguments it now raises—the risk of duplicative rulings—as a cornerstone of its motion. [2]

---

[1] *Authors Guild v. OpenAI Inc.*, Case No. 1:23-cv-08292 (S.D.N.Y.); *Sancton v. OpenAI, Inc.*, No. 23-cv-10211-SHS (S.D.N.Y.); *Alter v. OpenAI, Inc.*, Case No. 1:23-cv-10211 (S.D.N.Y.); *Basbanes v. Microsoft Corp.*, No. 24-cv-00084 (S.D.N.Y.).

[2] *See In re OpenAI ChatGPT Litigation,* Case No. 3:23-cv-03223-AMO (N.D. Cal.) ("California Action"), ECF No. 111 at 8 ("Plaintiffs' 'fear' that Judge Stein 'might reach a final decision on the merits' before this case is simply irrelevant . . .").

Since courts in both S.D.N.Y. and N.D. Cal. adopted OpenAI's position that the two actions proceed simultaneously, the parties, and each of the respective courts, have invested significant time and resources in managing and advancing the cases. Discovery is substantially advanced and indeed, there is an April 2025 fact discovery cut-off set in the California Actions. Therefore, given the few number of cases, the time and resources invested to date, and the advanced posture of the cases, the best alternative is cooperation among counsel, which is already happening. OpenAI's motion for centralization and transfer would discard all of those efforts. OpenAI also ignores the fact that the respective district court judges and magistrate judges assigned to the respective cases have efficiently managed the cases, resolving disputes and encouraging coordination between and among the actions, while avoiding conflicting rulings. Moreover, OpenAI's motion further seeks to sweep into a centralized proceeding a number of non-class and other disparate cases, each of which is in a different posture, some in their infancy—raising a variety of different claims, under different federal statutes, involving different facts and different technologies. Centralization and transfer of cases that involve separate and distinct legal and factual issues, and consequently different discovery records, is particularly ill-advised.[3]

At this point, even the cases that share the most in common are too far along for OpenAI's request to make any practical sense, especially given the informal coordination already happening. OpenAI's belated request for centralization and coordination is therefore unnecessary, lacks commonsense, and will likely be counterproductive and undermine the purposes of Section. Indeed, this Panel has repeatedly recognized that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023). Here, there are a multitude of options other than

---

[3] As described below, the California Actions are the farthest advanced, with the completion on discovery set for April 28, 2025. The *YouTube* action also pending in the Northern District of California and has nothing to do with the claims at issue in the author actions, other than they both name OpenAI as a defendant. The actions pending in S.D.N.Y. including the *Authors Guild*, *New York Times* and the *Daily News* Actions are consolidated already and subject to their own discovery management and scheduling under the supervision of Judge Stein and Magistrate Judge Wang. The other S.D.N.Y. cases involve DMCA claims arising from unrelated conduct and, though they are in their infancy, appear to be proceeding on their own separately.

centralization, including the coordination underway between the author class actions and the judges and magistrate judges actively managing them. In part because OpenAI demanded the cases proceed simultaneously and separately, Plaintiffs have already worked diligently to coordinate pretrial proceedings, including efforts to coordinate and not duplicate the discovery of electronically stored information and depositions. Plaintiffs in both cases negotiated a proposal governing depositions, submitted in the consolidated *Authors Guild* action.

While the California Plaintiffs oppose centralization, should the Panel find centralization and transfer appropriate, the Northern District of California is the appropriate forum. In addition to being where the first-filed and most advanced case (the California Action) is situated, the Northern District of California is where OpenAI is headquartered, has the experience to handle complex MDL class actions, and Judge Martínez-Olguín, who is presiding over the California Action, is not presiding over any MDL proceedings, and thus has the capacity to manage these cases through the pretrial phase.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The California Action

On June 28, 2023, Plaintiff Paul Tremblay filed a class action lawsuit against OpenAI in the Northern District of California captioned *Tremblay et al. v. OpenAI, Inc. et al.*, Case No. 3:23-cv-03223-AMO. Shortly thereafter, two virtually identical actions were filed, which were then consolidated under the caption *In re OpenAI ChatGPT Copyright Litigation*.[4] The consolidated California Action asserts violations of copyright law on behalf of a nationwide class of authors arising from the unauthorized use of protected materials by OpenAI in connection with its

---

[4] On July 7, 2023, a number of other authors, including Plaintiffs Sarah Silverman, Christopher Golden, and Richard Kadrey filed their complaint, alleging claims on behalf of a class of similarly situated plaintiffs. On September 8, 2023, a number of other authors, including Plaintiffs Michael Chabon, David Henry Hwang, Matthew Klam, Rachel Louise Snyder, and Ayelet Waldman filed their complaint captioned *Chabon v. OpenAI, Inc. et al*., Case No. 23-cv-04625-CRB on behalf of an identical proposed class of plaintiffs. On October 5, 2023, the Chabon Plaintiffs filed their First Amended Class Action Complaint, adding Laura Lippman, Jacqueline Woodson, Andrew Sean Greer, Ta-Nehisi Coates, and Junot Díaz as additional Plaintiffs. These actions have now been related and consolidated under the master caption, *In re OpenAI ChatGPT Litigation,* and assigned to Judge Martínez-Olguín, the judge in the first-filed case. California Action, ECF Nos. 26, 53, 74.

Language Models. *See* California Action, ECF No. 120 at ¶¶ 53, 69. Specifically, the California Action alleges that OpenAI engaged in, created, maintained, and operated their large language models in violation of Plaintiffs' rights and committed direct copyright infringement in violation of the Federal Copyright Act, 17 U.S.C. § 501. By their complaint, Plaintiffs seek damages and injunctive relief.

On October 6, 2023, the court in the California Action entered a pretrial schedule in the consolidated proceeding. California Action, ECF No. 51. Among other things, the schedule provided deadlines for discovery, class certification and summary judgment proceedings, and expert disclosures. *Id.* Notably, over OpenAI's objections, the scheduling order in the California Action sequences class certification before summary judgment. California Action, ECF No. 57.

Discovery has been well underway for many months in the California Actions. Over seventy-eight thousand documents have already been produced as part of continuing rolling productions by both sides. Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 3. The parties are also poised to begin taking depositions, with the earliest depositions set occur this month. Fact discovery is currently scheduled to close on April 28, 2025. California Action, ECF No. 209. The California Plaintiffs have issued a number of subpoenas to third parties, including Microsoft Corporation.[5]

**B.    The Consolidated *Authors Guild* Action**

On September 19, 2023, three months after the filing of the *Tremblay* Action, the Authors Guild filed its complaint against OpenAI. *Authors Guild v. OpenAI Inc.*, Case No. 1:23-cv-08292 (S.D.N.Y.) (the "*Authors Guild* Action"), ECF No. 40. The *Authors Guild* Action is brought on behalf of a narrower class, consisting of authors possessing registered copyrights and asserts copyright claims under 17 U.S.C. § 501, as well as additional claims for vicarious copyright infringement, and contributory infringement. *Id.* ¶¶ 334-346. The gravamen of the claim in the *Authors Guild* Action is the claim that OpenAI infringed Plaintiffs' registered copyrights when

---

[5] As discussed below, Microsoft is a named defendant in the *Authors Guild*, *N.Y. Times* and other of the New York cases. Saveri Decl., ¶ 5.

training OpenAI's large language models. *Id.* In addition to claims against OpenAI, the Authors Guild also asserts claims against Microsoft Corporation.

On November 21, 2023, Julian Sancton filed a substantively similar class action complaint to *Authors Guild* against OpenAI and Microsoft Corporation. *Sancton et al. v. OpenAI, Inc.*, No. 23-cv-10211-SHS (S.D.N.Y. Nov. 21, 2023) (the "*Alter* Action"), ECF No. 1. On December 19, 2023, Jonathan Alter and others (including Julian Sancton) filed a similar class action complaint alleging the same claims against the same defendants. Amended Complaint, *Alter* Action, ECF No. 26. Both the *Sancton* Action and *Alter* Action state infringement claims based on the use of their copyrighted material in the training of Defendants' large language models. On behalf of the same class asserted in *Sancton*, the *Alter* Action asserts claims of copyright infringement and contributory infringement. *Id.* ¶¶ 117-131. The *Authors Guild* Action and the *Alter* Action have been related and consolidated before Judge Stein. *Authors Guild* Action, ECF Nos. 56, 59.

On January 5, 2024, Nicholas Basbanes and other Plaintiffs filed a class action complaint against OpenAI and Microsoft Corporation. *Basbanes et al. v. Microsoft Corp. et al.*, No. 24-cv-00084 (S.D.N.Y. Jan. 5, 2024), (the "*Basbanes* Action") ECF No. 1. Like the other author class actions, the *Basbanes* Action asserts a claim for direct copyright infringement, vicarious copyright infringement, and contributory copyright infringement. *Id.* ¶¶ 133-148. On February 6, 2024, the *Basbanes* Action was also consolidated with the *Authors Guild, Sancton,* and *Alter* Actions. *Basbanes* Action (collectively the "*Authors Guild* Actions"). *Basbanes* Action, ECF No. 32. Magistrate Judge Wang is actively managing these class cases as part of the consolidated actions.

**C.    The News Actions**

On December 27, 2023, The New York Times Company filed a non-class action complaint against OpenAI and Microsoft Corporation. *The N.Y. Times Co. v. Microsoft Corp. et al.*, Case No. 1:23-cv-11195 (S.D.N.Y. Dec. 27, 2023) ("*N.Y. Times* Action"), ECF No. 1. The New York Times asserted claims for direct copyright infringement, vicarious copyright infringement, contributory copyright infringement, violation of the Digital Millennium Copyright Act, common law unfair competition by misappropriation, and trademark dilution. *Id.* ¶¶ 158-204. Unlike in the California and the *Authors Guild* Actions, the New York Times's direct copyright infringement claim does not

derive from OpenAI's unauthorized use of copyrighted material for its large language models. In addition, the New York Times alleges additional instances of direct copyright infringement, including OpenAI's infringing output in response to user prompts. *N.Y. Times* Action, ECF No. 170 at ¶¶ 163-164.

Subsequently the Daily News, LP and seven other regional newspapers filed their own non-class lawsuit against OpenAI and Microsoft in the Southern District of New York. *Daily News et al. v. Microsoft et al.*, Case No. 1:24-cv-03285, ECF No. 1 (S.D.N.Y. April 30, 2024) ("*Daily News* Action"). On June 27, 2024, the Center for Investigative Reporting ("CIR"), filed an individual action against OpenAI and Microsoft in the Southern District of New York. *Ctr. for Investigative Reporting v. OpenAI et al.*, Case No. 1:24-cv-04872, ECF No. 1 (S.D.N.Y. June 27, 2024) ("*CIR* Action"). Unlike the California and the *Authors Guild* Actions, but like the *N.Y. Times* Action, the *Daily News* Action and the *CIR* Action allege instances of direct copyright infringement based on OpenAI output. The *Daily News* Action and the *CIR* Action also assert claims for contributory copyright infringement and violation of Section 1202 of the DMCA.[6]

On September 12, 2024, Magistrate Judge Wang ordered the consolidation of the *New York Times* and *Daily News* lawsuits. *In re: OpenAI, Inc., Copyright Infringement Litigation*, MDL No. 3143, ECF No. 1-6. On October 31, 2024, Magistrate Judge Wang consolidated the *CIR* lawsuit with the *N.Y. Times* and *Daily News* cases. *CIR* Action, ECF No. 131. Judge Wang then placed all three cases on the same discovery schedule (the *N.Y. Times*, *Daily News*, and *CIR* Actions collectively, the "News Actions"). *N.Y. Times* Action, ECF No. 304.

**D.    The *Raw Story* and *Intercept* DMCA Actions**

In February 2024, The Intercept Media, Inc. filed a non-class action complaint in the Southern District of New York against OpenAI and Microsoft for violating Section 1202 of the Digital Millenium Copyright Act. *The Intercept Media, Inc. v. OpenAI, Inc. et al.* Case No. 1:24-cv-01515-JSR (S.D.N.Y.) ("*Intercept* Action"). Notably, the *Intercept* Action does not assert any

---

[6] The *Daily News* Action also asserts claims for Common Law Unfair Competition by Misappropriation, Trademark Dilution, and Dilution and Injury to Business Reputation (N.Y. Gen. Bus. Law § 360-l). *Daily News* Action, ECF No. 1 at ¶¶ 226-54.

claims for direct copyright infringement. Rather, the claims are predicated entirely on OpenAI's removal of copyright management information from copyrighted works owned by Plaintiff Intercept, which works were then used to train OpenAI's large language models and artificial intelligence products. *See Intercept* Action, ECF No. 87 ¶ 91-94. The *Intercept* Action is assigned to Judge Rakoff in the Southern District of New York, and OpenAI is represented by the same law firms that are defending it in the other actions. The pleadings were only recently settled in the *Intercept* Action; on December 5, 2024, OpenAI answered the Intercept Plaintiffs' Amended Complaint. *Intercept* Action, ECF No. 123.

In February 2024, Raw Story Media, Inc. and Alternet Media, Inc. filed a non-class action lawsuit in the Southern District of New York against OpenAI for violating the DMCA. *Raw Story Media, Inc. et al. v. OpenAI, Inc. et al.* Case No. 1:24-cv-01514-CM (S.D.N.Y.) ("*Raw Story* Action"). Like the *Intercept* Action, the *Raw Story* Action only alleges a DMCA claim against OpenAI. The *Raw Story* Action is assigned to Judge McMahon in the Southern District of New York, the Raw Story Plaintiffs are represented by the same lawyers who represent the Intercept in its Action, and OpenAI is represented by the same law firms that are defending it in the other actions. The pleadings remain unsettled—the *Raw Story* Plaintiffs have moved for leave to file an amended complaint, which OpenAI opposes. *Raw Story* Action, ECF Nos. 118-122.

**E.      The *YouTube* Action**

On August 2, 2024, Plaintiff David Millette filed a class action lawsuit against OpenAI in the Northern District of California, asserting claims for Unjust Enrichment or Restitution, and Unfair Competition. *Millette et al. v. OpenAI*, Case No. 5:24-cv-04710 (EJD), ECF No. 1 (N.D. Cal. Aug. 2, 2024) ("*YouTube* Action"). On October 18, 2024, Millette filed an amended complaint adding claims for direct copyright infringement and unfair competition under Massachusetts law. *Id.* at ECF No. 47. Unlike any the other actions, which are based on OpenAI's training on literary works, the sole infringement action asserted in *Milette* is predicated on OpenAI "transcribing and harvesting mass quantities of YouTube videos from the public internet[.]" *Id.* at ¶ 86. On August 28, 2024, District Judge Davila related the *YouTube* Action to *Milette v. Nvidia Corporation*, Case No. 24-cv-05157 (N.D. Cal.), a case brought by the same Plaintiff asserting similar claims against

Nvidia Corporation, a party not subject to the J.P.M.L. proceedings here. The pleadings are unsettled; on December 16, 2024 OpenAI filed a motion to dismiss the YouTube Plaintiffs' first amended complaint. *See* ECF No. 55.

**F.    Previous Efforts to Consolidate and Coordinate the California Action and the New York Actions**

**i.    OpenAI Opposed Earlier Efforts to Consolidate the Cases**

In November 2023, OpenAI advised that it intended to file a motion under the first-to-file rule to dismiss the *Authors Guild* Action or transfer it to California. However, after the Court in the California Action set a pretrial schedule that Open AI opposed, OpenAI reversed course and argued to keep the California Actions and New York Actions separate. In order to avoid the schedule set in the California Actions, OpenAI agreed that the *Authors Guild* Action and other actions pending in the Southern District of New York would proceed on their own, regardless of the pendency of additional similar actions in another jurisdiction. Indeed, OpenAI stipulated and agreed not to seek transfer of the *Authors Guild* Actions to another district nor would it file motions to dismiss under the first-to-file rule or under Rule 12. *Authors Guild* Action, ECF No. 56, ¶¶ 1-3.

In February 2024, Plaintiffs in the California Action filed motions to dismiss, enjoin, or transfer, and to enjoin the Consolidated *Authors Guild* Action and the *New York Times* Action under the first-to-file rule.[7] In their moving papers filed nearly a full year ago, Plaintiffs emphasized a number of the concerns that OpenAI now advances to support its current petition: the likelihood of inconsistent rulings in overlapping class actions, inefficiency, and the attendant waste of judicial resources.

Rather than join the California Plaintiffs' first-to-file motions, OpenAI opposed the filings in the California Action, characterizing Plaintiffs' motion as "inappropriate and unprecedented." California Action, ECF No. 111 at 5. And OpenAI attempted to marginalize Plaintiffs' concerns about judicial waste and disparate rulings, as a "fear" that Judge Stein "might reach a final decision on the merits" before the California Action, which OpenAI described as "simply irrelevant." California Action, ECF No. 111 at 8. OpenAI prevailed on its arguments and convinced the

---

[7] At the time, the *Daily News*, *CIR*, and *YouTube* Actions had not been filed.

California Court not to grant the California Plaintiffs' motion. The California Plaintiffs' Motion to Intervene for the purpose of transferring, staying, or dismissing the New York Actions (*Authors Guild* Action, ECF No. 100) was also denied. As a result, the litigations have proceeded simultaneously in the two jurisdictions.

### ii. The Parties in the Northern District of California and the *Authors Guild* Actions Have been Coordinating Discovery

On May 3, 2024, the California Plaintiffs sought the first deposition in the various cases subject to this J.P.M.L. action. Saveri Decl., ¶ 6. OpenAI sought a protective order, asking the Court in the California Action to pause depositions in the cases pending in the various jurisdictions and require the parties to meet and confer regarding coordinating depositions between the cases. The California court granted OpenAI's motion and urged the Parties to attempt to negotiate formal deposition coordination. California Action, ECF No. 144. The Parties did just that. Over the ensuing months, the parties in cases pending in both the Northern District of California and Southern District of New York engaged in extensive meet-and-confer efforts. Although the Parties were unable to reach agreement, they submitted competing proposals for coordinating depositions (including one joined by the California Plaintiffs). *Authors Guild* Action, ECF Nos. 216, 218 (joined by California Action Plaintiffs); News Actions, ECF No. 261. Thereafter, given the number of hotly contested discovery and scheduling disputes, the Court denied each of the proposed protocols as premature. *Authors Guild* Action, ECF No. 252, § II.D.

### III. ARGUMENT

Pursuant to 28 U.S.C. § 1407(a), the Panel may transfer civil actions for consolidated pretrial proceedings to any district where civil actions involving one or more common questions of fact are pending. Congress indicated that the objective of section 1407 "is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the just and efficient conduct of such actions." *Matter of N.Y. City Mun. Secs. Litig.*, 572 F.2d 49, 50, n.1 (2d Cir. 1978) (internal quotation marks and citations omitted). Before it authorizes a transfer, the Panel must determine that such a transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Section 1407(a) imposes the following requirements for transfer: (1) the civil actions involve "one or more common questions of fact," that transfer will (2) "be for the convenience of parties and witnesses" and (3) "promote the just and efficient conduct of such actions." *Id.* The party moving for transfer has the burden of showing that the statutory requirements for transfer are met. *See In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L. 1980); *In re 21st Century Prods., Inc "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1987). As set forth below, OpenAI's tardy motion must be denied because the factors weigh against consolidation.

The Panel should deny OpenAI's petition because it is unnecessary. The California Plaintiffs and *Authors Guild* Plaintiffs have already committed to (and are) coordinating discovery to the extent practicable. If that is what OpenAI wants, it already has it. But OpenAI's petition should be recognized for what it is, a naked attempt to use Section 1407 and J.P.M.L. proceedings after the fact, to forum shop and to advance recalibrated strategic objectives.

OpenAI strongly resisted centralization when it advanced its own interest. When the California Plaintiffs filed first-to-file motions in the cases then pending in the Northern District of California and the Southern District of New York, OpenAI *opposed* consolidation. Now, when Plaintiffs in the California Action have started noticing depositions in earnest, and after tens of thousands of documents have been produced, OpenAI seeks to use the J.P.M.L. procedures to alter the course of the cases.

OpenAI's motion is also late. The California Actions and the *Authors Guild* Actions have substantially advanced on separate tracks for months now. During that time, the parties in each set of Actions have devoted considerable time, money, and energy managing and prosecuting their cases. The parties have negotiated and litigated discovery and scheduling issues. The California Plaintiffs have briefed at least 14 discovery disputes to the Court, and the parties in the California Action have produced over 78,000 documents. Saveri Decl., ¶¶ 3-4. Given the extensive discovery already conducted and that fact discovery will close around the time the Panel decides OpenAI's motion, the California and *Authors Guild* Actions are far too advanced for centralization and transfer. Discovery coordination can continue to be accomplished by the parties, under the sound

supervision and management by the respective courts. Coordination between two consolidated proceedings in just two jurisdictions is commonplace and quite manageable, while formal consolidation, at this point, would simply cause substantial delay. It is clear that transfer and centralization will serve no interest except for OpenAI's strategic objectives.

**A.      OpenAI's Motion to Transfer Should Be Denied**

**i.      OpenAI has not Exhausted Alternatives to Centralization because It Has Resisted Coordination—until Now**

OpenAI has not exhausted the alternatives to centralization, nor has it shown that informal coordination between the cases is not feasible. The Panel has repeatedly recognized that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023) ("*Bank of America*"); *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F Supp. 2d 1376, 1378 (J.P.M.L. 2011). These options include Section 1404 transfer, dismissal or stay under the first-to-file doctrine, and cooperation among the parties and the various transferor courts. *Bank of Am.*, 707 F. Supp. 3d at 1416. And here, OpenAI has resisted prior efforts to centralize the cases in a single jurisdiction. Further, OpenAI gives short-shrift to the extensive efforts the parties and the courts have undergone and continue to take in efforts to coordinate discovery.

The concerns now raised by OpenAI are ones of their own making and cannot serve as a basis for centralization and transfer of already very well-developed and coordinated proceedings in just two different courts. The record here demonstrates that OpenAI first considered consolidating the cases under the first-to-file rule but it failed to actually seek that relief and opposed it in the California Action. OpenAI has not only failed to exhaust other alternatives, it has resisted them.

It is abundantly clear that OpenAI did not pursue this course of action because it wanted to enjoy the benefits of the case schedule it secured in the latter filed *Authors Guild* Actions in exchange for a commitment that it would not move to dismiss, stay, or transfer the *Authors Guild* Actions. As Judge Martínez-Olguín recently observed at the Case Management Conference in the California Action, OpenAI's complaints about the lack of formal coordination rings hollow because OpenAI asked for it. Saveri Decl., Ex. 1, Transcript of Status Conference Hearing at 15:4-6,

California Action ("I'm not sympathetic to your concerns that your clients will have to sit twice [for deposition] because you chose this, Mr. Malho (sic). You and your clients chose this."). Given that OpenAI brought this situation on itself, the Court refused to allow OpenAI to avoid discovery but instead urged the parties to continue to coordinate. *Id.* at 13:16-23, 15:2-6. The Plaintiffs in California have continued to do so, while meeting the court-ordered schedule and continuing to work to coordinate discovery, including depositions. The Panel should deny OpenAI's Motion to Transfer for this reason alone.

Voluntary coordination between the Parties and Courts is preferable to centralization and transfer under the MDL procedures. As the Panel has recognized, "consultation and cooperation among the three concerned district courts, if deemed appropriate by those courts, coupled with the cooperation of the parties, would be sufficient to minimize the possibility of conflicting pretrial rulings." *In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978). Indeed, voluntary cooperation is a "preferable" alternative to centralization in such circumstances. *See In re N.Y. Dep't of Corr. & Cmty. Supervision Medications with Abuse Potential Prisoner Litig.*, 709 F. Supp. 3d 1390, 1392 (J.P.M.L. 2023).

Coordination between the parties is not only feasible but underway. Even OpenAI acknowledges this. Saveri Decl., Ex. 1, Transcript of Status Conference Hearing at 16:14-17, California Action (OpenAI's Counsel: "deposition coordination has been challenging, I agree, but there has been some progress on that, and the specific progress is in the books cases in New York and in Mr. Saveri's books case here in California."). By way of example, the California Plaintiffs have obtained discovery orders—over OpenAI's objection—permitting the production in the California Action of electronically stored information produced in the *Authors Guild* Action and in other actions (ECF No. 243) and Plaintiffs have also sought the cross production of documents across the two actions, which OpenAI has to date quixotically resisted. Saveri Decl., ¶ 7.[8]

---

[8] Any failure to finalize a formal deposition coordination protocol is due to OpenAI's resistance to cross-produce documents across the proceedings. OpenAI also refused to agree to add the same ESI custodians across the proceedings. The California Plaintiffs explained to OpenAI that these inconsistencies will hurt, not help, the parties' efforts to coordinate deposition discovery across the different actions, but OpenAI remained insistent on its refusals. Saveri Decl., ¶ 7.

Coordination with respect to depositions is also underway. The Plaintiffs in the *Authors Guild* Action, with consultation from Plaintiffs in the California Action, filed a written request in that action for entry of a deposition protocol to govern deposition coordination across the California and *Authors Guild* Actions. *Authors Guild* Action, ECF No. 218. OpenAI (represented by the same law firms in both the California and New York actions) filed a competing written request for entry of a deposition protocol that would provide for deposition coordination across California Action and all of the New York Actions. *Authors Guild* Action, ECF No. 216. While Magistrate Judge Wang denied that motion as "premature" at the time, that was in October 2024. Since then, the parties have continued to engage in efforts to coordinate depositions, along with other discovery. Saveri Decl., ¶ 8. Such circumstances weigh against consolidation. *See In re Alteryx, Inc., Customer Data Security Breach Litig.*, 291 F. Supp. 3d 1377 (2018) ("cooperation among the few involved courts and counsel appears to be a workable alternative to centralization"); *In re Comcast Corp. Emp. Wage & Hour Employment Pracs. Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) (denying centralization where "the actions are pending before three judges in adjacent districts").

Coordination between the cases and parties is also likely to be achieved in part because OpenAI is represented by the same law firms in all pending actions listed in their appended Schedule of Actions and all of the actions are pending before just two courts. *See N.Y. Dep't of Corr. & Cmty. Supervision Medications*, 709 F. Supp. 3d at 1392 ("Because common counsel brought all actions and defendants are represented by many of the same counsel, the parties should be able to agree on a plan for common discovery and motion practice that minimizes the risk of duplication.").

Indeed, the majority of these cases are assigned to two district court judges,[9] and the courts themselves have been communicating and coordinating. Judge Martínez-Olguín and Judge Stein have been in direct communication regarding coordination of the proceedings. Saveri Decl., Ex. 1,

---

[9] California Action (N.D. Cal.) (Judge Martínez-Olguín); YouTube Action (N.D. Cal.) (Judge Davila); *Authors Guild* Action (S.D.N.Y.) (Judge Stein); News Actions (S.D.N.Y.) (Judge Stein); *Raw Story* Action (S.D.N.Y.) (Judge McMahon); *Intercept* Action (S.D.N.Y.) (Judge McMahon).

Transcript of Status Conference Hearing at 4:16-19, California Action (The Court: "I'm sure it will come to no surprise to any of you that I've been in touch with Judge Wang in the Southern District of New York. I've also been in touch with Judge Stein from the Southern District of New York."). Magistrate Judge Wang is also conducting joint discovery conferences for the *Authors Guild* Action and the News Actions, and thus discovery disputes in those actions are being resolved in a coordinated fashion. The communication between the courts involved also counsels against centralization. *In re Alteryx*, 291 F. Supp. 3d at 1377. The judges overseeing the cases have all the power they need to coordinate the matters before them and avoid unnecessary duplication of efforts and inconsistent rulings.

### ii. Transfer of the OpenAI Copyright Actions Will not Serve the Convenience of the Parties and Witnesses or Promote the Just and Efficient Conduct of the Litigation

The differences in claims of the cases OpenAI sweeps into its Motion, particularly in light of the stage of the proceedings of the longest pending cases also counsel against centralization. *See N.Y. Dep't of Corr. & Cmty. Supervision Medications*, 709 F. Supp. 3d at 1392; *In re Tex. Prison Conditions-of-Confinement Litig.*, 52 F.Supp.3d 1379 (J.P.M.L. 2014). Here, although there may be facial similarities between the allegations in the complaints specific to the acquisition and ingestion of material to train the large language models and other OpenAI products, the California Action and *Authors Guild* Action (who are already informally coordinating) focus entirely on a core infringement theory based on OpenAI's use of Plaintiffs' copyrighted works to train its large language models, but the similarities across the cases subject to the petition end there. OpenAI itself acknowledges the disparity between the different claims alleged in the various actions. Mot. at 14 ("Six cases assert direct copyright infringement claims; four raise contributory copyright infringement claims; three raise vicarious copyright infringement claims; five assert DMCA claims; four bring unfair competition claims; and two raise trademark dilution claims."). Despite OpenAI's attempt at drawing similarities between the pending actions, as explained below, the different actions focus on non-overlapping aspects of the OpenAI's product (output versus training), different types of work (from books, to news articles and reporting, to audiovisual works), and

involve different claims with different elements of proof. These many material differences counsel heavily against transfer and centralization:

**The News Cases Involve a Different Core Theory of Infringement**. OpenAI fails to properly account for a core theory of infringement asserted in the News Actions but not the California Action or the *Authors Guild* Action. Specifically, the News Plaintiffs allege that OpenAI's generative AI products disseminate generative *output* containing infringing copies and derivatives of the original works. *See N.Y. Times* Action, ECF No. 170, ¶ 163 ("By disseminating generative output containing copies and derivatives of Times Works through the ChatGPT offerings, the OpenAI Defendants have directly infringed The Times's exclusive rights in its copyrighted works."); *Daily News* Action, ECF No. 1, ¶ 196 (similar); *CIR* Action, ECF No. 1, ¶¶ 120-121 (similar). The California Action and *Authors Guild* Actions allege no such theory of infringement.

**The Raw Story *and* Intercept *Actions Bring Claims Under the DMCA Requiring Differing Analysis*.** Further, as OpenAI concedes in a footnote, the *Raw Story* Action and the *Intercept* Action do not assert copyright infringement claims at all. OpenAI tries to explain—in conclusory fashion—that "both of these cases *effectively* assert copyright infringement" (emphasis added), but never even attempts to explain *how* or *why* this is the case. In particular, the parties in the *Raw Story* and *Intercept* Actions bring claims under Section 1202 of the DMCA, claims that are not included in the California or *Authors Guild* Actions. The elements of the DMCA claims are substantially different than those of a copyright infringement claim, including that the DMCA requires proof of so-called "double scienter," namely that the defendant who distributed improperly attributed copyrighted material must have actual knowledge that copyright management information "has been removed or altered without authority of the copyright owner or the law," as well as actual or constructive knowledge that such distribution "will induce, enable, facilitate, or conceal an infringement." *See, e.g.*, *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020). Consequently, the claims in the *Raw Story* and *Intercept* Actions will require analysis of different facts and legal requirements, and, as a result, a substantial amount of required discovery will involve a different focus, including different witnesses.

***The YouTube Action Involves a Different Kind of Copyrighted Material.*** With respect to the YouTube Action, that case involves YouTube videos—an entirely different kind of copyrighted material. Plaintiffs in the California Action and *Authors Guild* are authors, who wrote fiction and nonfiction books. Plaintiffs in the YouTube Action are creators of video content. Here too, the discovery and case will be differently focused. For example, the YouTube Plaintiffs will need to inspect and/or seek production of video data, which is likely to be much more voluminous than the text data that the California Plaintiffs are seeking to discover. The YouTube Plaintiffs will also be conducting discovery regarding OpenAI's efforts to harvest and process video data. Likewise, there will be non-overlapping depositions of different witnesses with unique knowledge of OpenAI's acquisition of YouTube video content to train its LLMs, separate from its efforts to acquire and copy books.

The *YouTube* Action is also different for another reason—it has already been related and consolidated to another matter that is not subject to this J.P.M.L. proceeding. On August 28, 2024, the *YouTube* Action was related to *Millette v. Nvidia Corp.*, Case No. 24-cv-05157 (N.D. Cal.) (the "*Millette Nvidia* Action"). The *Millette Nvidia* Action is *not* subject to J.P.M.L. proceedings here. Nor should it be. That case is about the use of YouTube videos to train Nvidia's Cosmos AI model and asserts violations under California's Unfair Competition Law. *Millette Nvidia Action*, ECF No. 1. There are no claims brought under the Copyright Act or the DMCA. Indeed, there is no commonality between *Milette Nvidia* Action and the California or the *Authors Guild* Actions or the other actions subject to the J.P.M.L. proceedings here. Unlike the *Millette Nvidia* Action, the *YouTube* Action has only one common fact: the case is also against OpenAI. But this is not a reason for centralization but instead spotlights the failings of OpenAI's petition here—it tries to sweep up disparate actions for centralization and transfer without any rhyme or reason besides superficial consideration that the cases involve OpenAI and any of its AI systems.

***Defendants Are Not Coextensive Across the Actions.*** Centralization should also be denied for another reason: the Parties, and more importantly, defendants, are not identical across the Actions subject to the Motion. Specifically, Microsoft is a defendant in some, but not all of the

actions, are is not named as a defendant in the California Action.[10] Thus, there are different parties involved in a number of the actions, counseling against centralization.

**B.     Should the Panel Order Centralization, the Northern District of California is the Most Appropriate Forum for Centralization**

Should the Panel determine that centralization is appropriate, the Northern District of California is the most appropriate forum for centralization. In determining where to transfer an MDL action, the Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIG. (FOURTH) § 20.131 (2004). In addition to the fact that the California Actions are the most advanced, these factors support transfer to the Northern District of California.

The venue of actions pending is a "very important factor" to the Panel, and "the Panel will not normally transfer actions to a district in which no action is then pending." MANUAL FOR COMPLEX LITIG. (FOURTH), § 6:8. The *Tremblay* Action, filed June 28, 2023 in the Northern District of California, was the first action challenging OpenAI's use of copyright protected written work to train its generative AI models. The California Plaintiffs have been actively managing the litigation from the start. Discovery is progressing—by the time the Panel hears OpenAI's motion, the California Plaintiffs anticipate that most of the fact depositions will be completed. In addition, the California Plaintiffs have engaged with Defendants and counsel in New York to coordinate and efficiently litigate the various cases.

The Northern District of California is also the most convenient geographic location for the parties and the witnesses. OpenAI's principal place of business is in the Northern District of California. Defendant Microsoft also has a substantial presence there and is based just outside of nearby Seattle, Washington. Defendants therefore would benefit from the convenience of an MDL location in San Francisco to minimize the burdens associated with travel and communication

---

[10] Microsoft is a Defendant in the *Authors Guild* Action, the News Actions, and the *Intercept* Action, but not the California Action, the *YouTube* Action, and the *Raw Story* Action.

spanning multiple time zones. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002) (transferring to Northern District of California would provide "an accessible and convenient location"). And a number of the Plaintiffs reside in the Northern District of California or elsewhere in California. It is therefore fair to presume that a significant volume of discoverable documents and a significant number of key witnesses—including Defendants' C-Suite and other senior executives—are located in California and therefore can be called to testify at trial. *See In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (transferring cases to district because "two of the defendants are headquartered in that district and, accordingly, relevant documents and witnesses are likely located there."). Each of these factors is significant on its own; taken together, these factors present a strong case for transfer to the Northern District of California should the Panel deem centralization and transfer appropriate.

The Northern District of California also has extensive experience handling MDL proceedings, as well as the capacity and resources required to manage these cases. *See In re Juul Labs, Inc. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019) (consolidating ten actions to the Northern District of California where panel "notified of more than forty potentially-related actions"); *In re Lithium Ion Batteries Antitrust Litig.*, MDL 2420, Case No. 4:13-md-2420 (N.D. Cal. 2012); *In re Transpac. Passenger Air Transp. Antitrust Litig.*, 536 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, Case No. 3:07-md-1827 (N.D. Cal. 2007). Judge Martínez-Olguín, who has presided over the California Action since its inception, is also presently not presiding over an MDL, and possesses the requisite familiarity and capacity to continue managing this complex action.

Microsoft asks the Panel to transfer the cases to the Northern District of California to Judge Vince Chhabria. Judge Chhabria, however, is not assigned to any of the cases subject to the pending Motion and has no particularity familiarity or connection to this dispute. On the other hand, Microsoft does not explain why Judge Martínez-Olguín, or for that matter, Judge Davila, would not be suitable. In fact, Judge Martínez-Olguín would be the most suitable judge to oversee these cases, if the Panel were to conclude centralization and transfer were appropriate. Judge

Martínez-Olguín has overseen the California Action (the first-filed) for months, has addressed pleadings issued, and is familiar with the claims and applicable law. As described above, she has already devoted significant time and energy to case management issues. Additionally, Judge Martínez-Olguín does not presently oversee any multidistrict proceedings. In contrast, Judge Chhabria is also presently presiding over two MDLs, *In re Roundup Products Liability Litigation*, MDL No. 2741 and *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, MDL No. 2843. Judge Chhabria is also presiding over another complex generative-AI class action, *Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417 (N.D. Cal.), indicating a very full docket. Judge Martínez-Olguín has the capacity and expertise to handle a multidistrict proceeding and has particular expertise with respect to the issues particular to this dispute.

## IV. CONCLUSION

Based on the foregoing, the California Plaintiffs respectfully request that this Panel deny OpenAI's motion to transfer. Should the Panel decide that centralization and transfer is warranted at this time, it should transfer the case to the Northern District of California before Judge Martínez-Olguín.

Dated:  January 3, 2025                Respectfully submitted,

*/s/ Joseph R. Saveri*
Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
William W. Castillo Guardado (State Bar No. 294159)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:        jsaveri@saverilawfirm.com
                  czirpoli@saverilawfirm.com
                  cyoung@saverilawfirm.com
                  wcastillo@saverilawfirm.com
                  hbenon@saverilawfirm.com
                  acera@saverilawfirm.com
                  mpoueymirou@saverilawfirm.com
                  mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323) 968-2632
Facsimile:   (415) 395-9940
Email:        mb@butiericklaw.com

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
Email: asweatman@caffertyclobes.com

Maxwell V. Pritt
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: mpritt@bsfllp.com

Evan Matthew Ezray
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Email: eezray@bsfllp.com

Joshua Stein
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jstein@bsfllp.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*