**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE OPENAI, INC. COPYRIGHT LITIGATION | MDL NO.  3143 |

***AUTHORS GUILD* CLASS PLAINTIFFS' RESPONSE TO OPENAI'S MOTION FOR
TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.............................................2

    A. The Litigations .........................................................................................2

        1. The claims and issues vary across cases. .....................................2

            a. *New York Authors Guild and Alter consolidated copyright infringement class action against OpenAI and Microsoft.* .............2

            b. *New York Individual News cases against OpenAI and Microsoft.* .......................................................................................3

            c. *New York DMCA cases against OpenAI.*.........................................4

            d. *California consolidated copyright class actions against OpenAI.* ...............................................................................4

            e. *California YouTube creator class actions against OpenAI* .............5

        2. The litigations are at different stages of proceedings. ................5

            a. *The Authors Guild actions, News Cases, and California Consolidated class actions are winding-up discovery.*...................5

            b. *The DMCA and YouTube actions have not yet advanced past the pleading stage.*....................................................................6

    B. Current Judicial Coordination...................................................................7

    C. OpenAI Agreed Not to Seek Centralization. ...........................................7

    D. Courts Have Rejected Consolidation of the Litigations. ..........................8

    E. OpenAI Has Not Properly Pursued Alternatives Before Seeking Centralization..........................................................................................9

III. ARGUMENT ......................................................................................................10

    A. Limited Informal Coordination Is Sufficient and Appropriate. ............10

    B. OpenAI Cannot Seek Centralization Under the January 2024 Stipulation, Which Confirms Why Centralization Is Inappropriate.........................12

    C. The Litigations Do Not Otherwise Satisfy the Section 1407 Standard. ...............15

        1. Centralization will not promote efficiency. .............................15

        2. The cases are factually distinct, as other courts have recognized.............17

            a. *The core fact questions differ.*.......................................................17

# TABLE OF CONTENTS
## (continued)

Page

b.   *OpenAI fails to identify any unusually complex common fact questions.* ...............................................................18

D.   If Centralization Were Appropriate, the Southern District of New York Is the Most Suitable Forum.........................................................................19

IV.   CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alter, et al. v. OpenAI, Inc., et al.*,
   Case No. 23-cv-10211 (S.D.N.Y. Nov. 21, 2023) .....................................................2

*In re Athena Universal Life II Cost of Ins. Increase Litig.*,
   268 F. Supp. 3d 1354 (J.P.M.L. 2017) ................................................................14

*Authors Guild, et al. v. OpenAI, Inc. et al.*,
   Case No. 23-cv-08292 (S.D.N.Y. Sep. 9, 2023) ......................................... *passim*

*In re: Baby Food Mktg., Sales Prac. & Prods. Liab. Litig.*,
   544 F. Supp. 3d 1375 (J.P.M.L. 2021) ..................................................................9

*In re Bank of Am. Fraudulent Acct. Litig.*,
   707 F. Supp. 3d 1415 (J.P.M.L. 2023) ...........................................................1, 18

*Bartz, et al., v. Anthropic PBC*,
   Case No. 24-cv-05417 (N.D. Cal. Aug. 19, 2024) ..............................................18

*Basbanes, et al. v. Microsoft Co., et al.*,
   Case No. 24-cv-00084 (S.D.N.Y. Jan. 5, 2024) ...................................................2

*In re Bernzomatic & Worthington Branded Handheld Torch Prods. Liab. Litig.*,
   293 F. Supp. 3d 1380 (J.P.M.L. 2018) ................................................................15

*In re Blair Corp. Chenille Robe Prods. Liab. Litig.*,
   703 F. Supp. 2d 1379 (J.P.M.L. 2010) ................................................................16

*Chabon, et al. v. OpenAI, Inc., et al.*,
   Case No. 23-cv-04625 (N.D. Cal. Sep. 8, 2023) ...................................................4

*In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*,
   190 F. Supp. 3d 1344 (J.P.M.L. 2016) ..................................................................9

*In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*,
   684 F. Supp. 2d 1377 (J.P.M.L. 2010) ................................................................15

*Daily News LP, et al. v. Microsoft Co., et al.*,
   Case No. 24-cv-03285 (S.D.N.Y. Apr. 30, 2024) ..........................................3, 7, 12

*In re Dollar Tree Stores Inc., FLSA and Wage & Hour Litig.*,
   829 F. Supp. 2d 1376 (J.P.M.L. 2011) ................................................................11

*In re Electrolux Dryer Prods. Liab. Litig.*,
   978 F. Supp. 2d 1376 (J.P.M.L. 2013) ................................................................16

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    412 F. Supp. 3d 1357 (J.P.M.L. 2019) .......................................................................19

*In re Iowa Beef Packers, Inc.*,
    309 F. Supp. 1259 (J.P.M.L. 1970) .........................................................................18

*In re JumpSport, Inc. ('845 & '207) Pat. Litig.*,
    338 F. Supp. 3d 1356 (J.P.M.L. 2018) ....................................................................16

*Kadrey et al., v. Meta Platforms, Inc.*,
    Case No. 23-cv-03417 (N.D. Cal. Jul. 7, 2024) .......................................................18

*Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*,
    400 F. Supp. 3d 7 (S.D.N.Y. 2019) .........................................................................13

*In re: Medi-Cal Reimbursement Rate Reduction Litig.*,
    652 F. Supp. 2d 1378 (J.P.M.L. 2009) ....................................................................18

*In re: Michaels Stores, Inc., Pin Pad Litig.*,
    844 F. Supp. 2d 1368 (J.P.M.L. 2012) ....................................................................18

*Millette v. Google et al.*,
    Case No. 24-cv-04708 (N.D. Cal. Aug. 2, 2024) .......................................................9

*Millette v. Nvidia Corporation*,
    Case No. 24-cv-05157 (N.D. Cal. Aug. 14, 2024) .....................................................9

*Millette, et al. v. OpenAI, Inc., et al.*,
    Case No. 24-cv-04710 (N.D. Cal. Aug. 2, 2024) ................................................ *passim*

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig.*,
    38 F. Supp. 3d 1380 (J.P.M.L. 2014) ......................................................................11

*In re Move Artwork Copyright Litig.*,
    473 F. Supp. 2d 1381 (J.P.M.L. 2007) ....................................................................17

*New York Times Co. v. Microsoft Co., et al.*,
    Case No. 23-cv-11195 (S.D.N.Y. Dec. 27, 2023) .....................................................3

*In re Range View Mgmt., LLC Tel. Consumer Prot. ACT (TCPA) Litig.*,
    MDL No. 3123, 2024 WL 4429361 (J.P.M.L. Oct. 4, 2024) ......................11, 15, 19

*Raw Story Media, Inc., et al. v. OpenAI, Inc., et al.*,
    Case No. 24-cv-01514 (S.D.N.Y. Feb. 28, 2024) ............................................ *passim*

*In re Reglan/Metoclopramide Prods. Liab. Litig.*,
    622 F. Supp. 2d 1380 (J.P.M.L. 2009) ....................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Royal Am. Indus., Inc. Sec. Litig.*,
407 F. Supp. 242 (J.P.M.L. 1976)............................................................................10

*In re SFPP, L.P., R.R. Prop. Rights Litig.*,
121 F. Supp. 3d 1360 (J.P.M.L. 2015).....................................................................18

*Splunk Inc. v. Cribl, Inc.*,
662 F. Supp. 3d 1029 (N.D. Cal. 2023) ...................................................................17

*The Center for Investigative Reporting, Inc. v. OpenAI, Inc., et al.*,
Case No. 24-cv-04872 (S.D.N.Y. Jun. 27, 2024) ...........................................3, 7, 12

*The Intercept Media, Inc., v. OpenAI, Inc., et al.*,
Case No. 24-cv-01515-JSR (S.D.N.Y. Feb. 28, 2024) .................................. *passim*

*In re Time Warner Cable, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
247 F. Supp. 3d 1388 (J.P.M.L. 2016).....................................................................19

*Tremblay, et al. v. OpenAI, Inc. et al*,
Case No. 23-cv-03223 (N.D. Cal. Jun. 28, 2023) ......................................... *passim*

*In re Uber Techs., Inc., Wage & Hour Emp. Pracs.*,
158 F. Supp. 3d 1372 (J.P.M.L. 2016)........................................................................9

**Statutes**

17 U.S.C. 1202(b)(1) ..................................................................................................17

28 U.S.C. § 1404.............................................................................................. *passim*

28 U.S.C. § 1407.............................................................................................. *passim*

Digital Millennium Copyright Act (DMCA) .................................................... *passim*

**Court Rules**

Rule 1407 ....................................................................................................................14

## I.      <u>INTRODUCTION</u>

Centralization is inappropriate. OpenAI seeks MDL treatment of a small number of cases that multiple district courts have already refused to relate for lack of sufficient common questions of fact.  The district courts were correct and these cases fail the Section 1407 test. The majority of the cases will close fact discovery by April 30, 2025, while the remainder are at the pleading stage. The judges assigned to the procedurally advanced cases are coordinating discovery and—to the extent it would create any efficiencies—the fulsome discovery already conducted can be made available to the parties in the other actions pursuant to further coordination.

Centralization is inappropriate here for another, independent reason. This time last year, OpenAI had the opportunity to move all of the copyright infringement cases against it (including two sets of consolidated class actions) to the same forum and judge under Section 1404. Instead of moving to transfer, it executed a stipulation that expressly *waived* its right to seek a transfer of the consolidated class action cases pending against it in the Southern District of New York. In doing so, OpenAI agreed that these two sets of cases—one in the Northern District of California, the other in the Sothern District of New York—would proceed in parallel, on separate tracks. This was a strategic decision, and one that OpenAI has capitalized on over the last twelve months. As Judge Martinez-Olguin recently recognized, OpenAI has used the two jurisdictions to "play [the] cases off each other" and delay discovery. Geman Decl., Ex. A at 4:23-24.

OpenAI no longer wishes to keep these cases in separate jurisdictions, but Section 1407 does not serve to provide a tactical about-face. The Panel has "repeatedly . . . emphasized that centralization under Section 1407 should be the last solution after considered review of all other options." *In re Bank of Am. Fraudulent Acct. Litig.,* 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023) (citation omitted). Here, OpenAI seeks centralization as a *first* solution, after it waived its right to

move under Section 1404. Because the consequences that OpenAI decries are problems of its own making, and because OpenAI has failed to put forward any basis for centralization under Section 1407, OpenAI's motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Litigations

#### 1.    The claims and issues vary across cases.[1]

##### a.    *New York Authors Guild and Alter consolidated copyright infringement class action against OpenAI and Microsoft.*

On September 19, 2023, eighteen plaintiffs (authors and the Authors Guild) filed a class action against OpenAI[2] in the Southern District of New York, alleging that OpenAI infringed the authors' copyrighted works of fiction by using them to train its large language models. *Authors Guild, et al. v. OpenAI, Inc. et al.*, Case No. 23-cv-08292 (S.D.N.Y. Sep. 9, 2023) (*Authors Guild*), Dkt. No. 1. On November 21, 2023, twelve additional authors filed a class action against OpenAI and Microsoft alleging that the defendants used their non-fiction works to train large language models (LLMs) and, in so doing, infringed their copyrights. *Alter, et al. v. OpenAI, Inc., et al.*, Case No. 23-cv-10211 (S.D.N.Y. Nov. 21, 2023), Dkt. No. 1.

On February 5, 2024, the *Authors Guild* and *Alter* plaintiffs (hereinafter *Authors Guild* plaintiffs) filed a First Consolidated Class Action Complaint[3] on behalf of book authors, alleging

---

[1] However, the same counsel represent OpenAI across all these cases.

[2] OpenAI refers to OpenAI Inc., OpenAI OpCo LLC, OpenAI GP LLC, OpenAI LLC, OpenAI Global LLC, OAI Corporation LLC, OpenAI Holdings LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund GP I LLC, and OpenAI Startup Fund Management LLC.

[3] On January 5, 2024, Nicholas Basbanes and Nicholas Ngagoyeanes filed a class action complaint asserting claims similar to those filed in the consolidated *Authors Guild* action. *Basbanes, et al. v. Microsoft Co., et al.*, Case No. 1:24-cv-00084 (S.D.N.Y. Jan. 5, 2024). This case was consolidated with *Authors Guild* and *Alter* litigations (*Basbanes* Dkt Nos. 3, 4) and subsequently stayed by stipulation of the parties. *Id.* Dkt. No. 103. The *Basbanes* plaintiffs are now proceeding on an individual basis. *Id.*

that defendants pirated their books, and asserting claims for direct, vicarious, and contributory copyright infringement against OpenAI and Microsoft. *Authors Guild* Dkt. No. 69.

> **b.** ***New York Individual News cases against OpenAI and Microsoft.***

On December 27, 2023, *The New York Times* filed an action against OpenAI and Microsoft in the Southern District of New York, alleging that the defendants copied millions of its articles for training LLMs and asserting claims for direct, vicarious, and contributory copyright infringement, violation of the DMCA, common law misappropriation, and trademark dilution. *New York Times Co. v. Microsoft Co., et al.*, Case No. 23-cv-11195 (S.D.N.Y. Dec. 27, 2023), Dkt. No. 170.

Two other individual newspaper cases were filed in the Southern District of New York in April and June 2024. First, the Daily News and several other news outlets and news publishers filed an action against OpenAI and Microsoft on April 30, 2024. *Daily News LP, et al. v. Microsoft Co., et al.,* Case No. 24-cv-03285 (S.D.N.Y. Apr. 30, 2024) (*Daily News* Dkt.), Dkt. No. 1. Second, The Center for Investigative Reporting (CIR) filed on June 27, 2024. *The Center for Investigative Reporting, Inc. (CIR) v. OpenAI, Inc., et al.,* Case No. 24-cv-04872 (S.D.N.Y. Jun. 27, 2024) (*CIR* Dkt.), Dkt. No. 1. Both the *Daily News* and *CIR* cases allege claims for direct copyright infringement.

The *Daily News* and *CIR* cases were consolidated with the *New York Times* action on September 12, 2024 and October 31, 2024, respectively (collectively "News actions"). *Daily News* Dkt. No. 87; *CIR* Dkt. No. 92. The Newspaper Actions and the *Authors Guild* Consolidated Class Actions are being coordinated for discovery purposes before Magistrate Judge Ona T. Wang.

**c.**    *New York DMCA cases against OpenAI.*

On February 28, 2024, Raw Story Media, Inc. and Alternet Media, Inc. filed an action in the Southern District of New York, alleging that OpenAI removed copyright management information (CMI) from its works in violation of the Digital Millennium Copyright Act (DMCA). *Raw Story Media, Inc., et al. v. OpenAI, Inc., et al.*, Case No. 24-cv-01514 (S.D.N.Y. Feb. 28, 2024), (*Raw Story*) Dkt. No. 1. That same day, The Intercept Media, Inc. filed an action against OpenAI and Microsoft, alleging defendants removed CMI from, and subsequently distributed, its works, in violation of the DMCA. *The Intercept Media, Inc., v. OpenAI, Inc., et al.*, Case No. 24-cv-01515-JSR (S.D.N.Y. Feb. 28, 2024), Dkt. No. 1. Neither of these cases assert claims of direct copyright infringement.

**d.**    *California consolidated copyright class actions against OpenAI.*

On June 28, 2023, authors Paul Tremblay and Mona Awad filed a Complaint against OpenAI in the Northern District of California. *Tremblay, et al. v. OpenAI, Inc. et al*, Case No. 23-cv-03223 (N.D. Cal. Jun. 28, 2023) (*In re ChatGPT*), Dkt. No. 1. The *Tremblay* plaintiffs brought claims for direct copyright infringement, vicarious copyright infringement, violations of section 1202(b) of the DMCA, unjust enrichment, violations of the California and common law unfair competition laws, and negligence on behalf of all copyright holders that allegedly had their works used by OpenAI to train its LLMs. *In re ChatGPT* Dkt. No. 1.

On July 7, 2023, three more authors (also represented by *Tremblay* counsel) filed identical claims against OpenAI on behalf of an identical putative class. *Silverman, et al. v. OpenAI, Inc., et al.*, 3:23-cv-03416. Counsel for the two groups of plaintiffs moved for the cases to be related, *In re ChatGPT* Dkt. No. 16, which the Court promptly accepted. *In re ChatGPT* Dkt. No. 26. On September 8, 2023, five more authors (also represented by *Tremblay* counsel), filed identical claims on behalf of a similar putative Class of copyright holders. *Chabon, et al. v.*

*OpenAI, Inc., et al.,* Case No. 3:23-cv-04625 (N.D. Cal. Sep. 8, 2023), Dkt. No. 11, ¶ 66.

Plaintiffs' Counsel subsequently moved to relate the *Chabon, Tremblay* and *Silverman* cases (*In re ChatGPT* Dkt. No. 46), which the district court promptly accepted. *In re ChatGPT* Dkt. No. 53.

The *Tremblay*, *Silverman*, and *Chabon* actions were ultimately consolidated pursuant to the parties' stipulation on February 16, 2024. *In re ChatGPT* Dkt. No. 107. A consolidated Complaint was then filed on March 13, 2024 bringing the same claims against the OpenAI entities. *In re ChatGPT* Dkt. No. 120.

### e. *California YouTube creator class actions against OpenAI*

On August 2, 2024, two YouTube creators brought claims against OpenAI, alleging that OpenAI transcribed and used their YouTube videos for training its LLM. *Millette, et al. v. OpenAI, Inc., et al.*, Case No. 24-cv-04710 (N.D. Cal. Aug. 2, 2024), Dkt. 1. The *Millette* plaintiffs assert claims under the Copyright Act, the laws of California and Massachusetts and a claim for unjust enrichment. *Millette,* Dkt. No. 47. The *Millette* plaintiffs brought these claims on behalf of themselves and all persons or entities domiciled in the United States who uploaded any YouTube video that was transcribed and used as training data for OpenAI's LLMs, without their consent. *Id.* 47, ¶ 32. Neither OpenAI nor the *Millette* plaintiffs moved to relate this action with the *In re ChatGPT* cases pending in the same district before Judge Martinez-Olguin.

### 2. The litigations are at different stages of proceedings.

#### a. *The Authors Guild actions, News Cases, and California Consolidated class actions are winding-up discovery.*

**The Authors Guild actions** have been in discovery for over 400 days and fact discovery is set to close on April 30, 2025. Author plaintiffs have served 98 document requests, 15 Interrogatories, and 939 RFAs. Ybarra Decl., ¶4. The parties have briefed 14 discovery disputes

and collectively produced more than 160,000 documents. Geman Decl., ¶ 3. Plaintiffs have inspected OpenAI's source code and have conducted two multi-day inspections of their training data. *Id*. Depositions are expected to commence within weeks of this writing. *Id*. ¶ 4.

*The News actions* have been in discovery for over 300 days and fact discovery is set to close on April 30, 2025. News plaintiffs have served 130 document requests and 10 Interrogatories. Ybarra Decl., ¶ 5. The parties have briefed 32 discovery motions and collectively produced more than 300,000 documents. Geman Decl., ¶ 5. Plaintiffs have also inspected OpenAI's training data. *Id*. Depositions are expected to commence within weeks of this writing. *Id*.¶ 4.

*In re ChatGPT actions* have been in discovery for over 450 days and fact discovery is set to close on April 28, 2025. *In re ChatGPT* Dkt. No. 209. *In re ChatGPT* plaintiffs have served 80 document requests, 16 Interrogatories, and 178 RFAs. Ybarra Decl., ¶ 3. The parties have briefed more than fourteen discovery motions and have collectively produced more than 75,000 documents. Geman Decl., ¶ 5.

### b. *The DMCA and YouTube actions have not yet advanced past the pleading stage.*

*Raw Story*'s complaint was dismissed—in its entirety—on standing grounds on November 7, 2024, and the court denied without prejudice the plaintiffs' motion for leave to replead their claims. *Raw Story* Dkt. No. 117. To amend their complaint, the *Raw Story* plaintiffs must prevail on a motion "explaining why the proposed amendment would not be futile." *Id*. The briefing on that motion is scheduled for completion on January 21, 2025. *Id*. Dkt No. 121.

*The Intercept* plaintiffs' claims against Microsoft were dismissed with prejudice on November 21, 2024. *Intercept* Dkt. No. 122. In the same order, the district court partially dismissed the DMCA claims against OpenAI. *Id*. As of this writing, the district court has not

issued its formal order on the motion to dismiss, and discovery on the remaining DMCA claim remains stayed.  Mot. at 9.

*The YouTube Action* has not entered discovery and OpenAI's pending motion to dismiss the complaint is scheduled for hearing on May 15, 2025. *Millette* Dkt. No. 55.

B.      **Current Judicial Coordination.**

The *Authors Guild* and *News* actions are both before Judge Sidney H. Stein, who referred both actions to Judge Ona Wang to supervise discovery. *Authors Guild,* Dkt. No. 177; *News* Dkt. No. 162. Judge Wang is coordinating discovery in these actions and conducting regular joint discovery conferences. *See e.g., NYT* Dkt. No. 162; *Authors Guild* Dkt. No. 177; *Authors Guild* Dkt. No. 288; *Authors Guild* Dkt. No. 202.

*In re ChatGPT* is before Judge Martinez-Olguin, who is communicating directly with both Judge Stein and Judge Wang about coordinating the litigations. Geman Decl. Ex. A at 4:15-19; 8:21-25. Judge Illman, supervising discovery in *In re ChatGPT*, is also in direct communication with Judge Martinez-Olguin (*id.*) and issued a directive that "all counsel" should confer on ways that the "discovery process (and depositions in particular) in [the NY and CA] cases may be streamlined and made efficient." *In re ChatGPT*, Dkt. 144 at 3. The parties in the *In re ChatGPT*, *Authors Guild* action, and News actions continue to confer regarding coordination of discovery.  Geman Decl. ¶ 9.

C.      **OpenAI Agreed Not to Seek Centralization.**

On January 22, 2024, the parties in the *Authors Guild* case entered a stipulation in which OpenAI and Microsoft "consent[ed] and stipulate[ed] not to seek transfer of the above captioned actions to another district" and "not to bring a motion to dismiss under the first-to-file rule." *Authors* Guild, Dkt. No. 31, ¶ 1.  OpenAI and Microsoft also agreed not to seek Section 1407 transfer of the *Authors Guild* action, unless "additional cases are filed raising similar claims on

behalf of individual plaintiffs or proposed classes that overlap, either partially or completely, with the classes proposed in the operative Complaints." *Authors Guild*, Dkt. No. 56. That eventuality did not transpire; indeed, on the date of this agreement, both *In re ChatGPT* and the *New York Times* actions were pending. *See supra* Factual and Procedural Background.  The only other cases filed since the stipulation have either been consolidated with the News actions (*i.e.*, the *Daily News* and *CIR* actions) or do not raise similar claims or involve overlapping classes (*i.e.*, the DMCA actions and *Millette* YouTube creator action).

Under this stipulation, OpenAI secured what it considered to be benefits to itself in exchange for its agreement, including its preferred case sequencing of having summary judgment determined before adjudication of class certification. *Authors Guild*, Dkt. No. 56.  OpenAI has offered no explanation for violating the stipulation and, as shown in Section II below, there is none.

**D.      Courts Have Rejected Consolidation of the Litigations.**

In February of 2024, the *In re ChatGPT* plaintiffs filed motions to intervene and dismiss (or in the alternative, transfer) the *Authors Guild* action and *The New York Times* action in the Southern District of New York, arguing that the cases overlap with their own. *Authors Guild* Dkt. No. 71; *News* Dkt. No. 47. Judge Stein denied the motion to intervene. *Authors Guild* Dkt. No. 100; *News* Dkt. No. 84; *see also In re ChatGPT* Dkt. No. 118 (denying motion advancing similar arguments to enjoin OpenAI from proceeding in SDNY actions). OpenAI did not take a position on the motion filed by the *In re ChatGPT* plaintiffs.

Alongside their complaints, the *Raw Story* and *Intercept* plaintiffs filed Statements of Relatedness to the *News* actions. *Raw Story* Dkt. No. 5; *Intercept* Dkt. No. 4. Judge Stein determined that the cases were not related. OpenAI then proposed relating the *Raw Story* to *The*

*Intercept.* Judge Rakoff and Judge McMahon conferred and denied the request, determining "the cases are not related." Ybarra Decl., Ex. 4.

E.   **OpenAI Has Not Properly Pursued Alternatives Before Seeking Centralization.**

OpenAI has not filed any motions under Section 1404 in any of the actions it seeks to centralize. OpenAI has filed motions to consolidate the News actions, those motions were granted, and all of the copyright infringement actions pending in the Southern District of New York (*Authors Guild* and the *News actions*) are proceeding with coordinated discovery before Magistrate Judge Wang. At no point has OpenAI requested that plaintiffs in the SDNY copyright actions coordinate with SDNY DMCA cases. *See* Geman Decl.¶ 8.

In the Northern District of California, OpenAI has made no effort to relate, consolidate, or otherwise coordinate the *Millette* action with the *In re ChatGPT* action pending before Judge Martinez-Olguín, nor has OpenAI moved to transfer the *Millette* action. Instead, OpenAI filed a motion to relate the *Millette* action to *two other cases* brought against Google and Nvidia by the same plaintiffs and pending before Judge Edward Davila. *Millette v. Google et al.*, Case No. 24-cv-04708 (N.D. Cal. Aug. 2, 2024), Dkt. No. 13. OpenAI argued that relating the cases was appropriate as "all three cases are about the same property—YouTube videos  . . . [and] in each case, the alleged wrongdoing is the same—the alleged taking of [] YouTube videos, via transcription or scraping, and the alleged use of that content to train generative AI models." *Id.* at 2. Judge Davila ordered the case related to *Millette v. Google* and *Millette v. Nvidia Corporation*, Case No. 24-cv-05157 (N.D. Cal. Aug. 14, 2024). *Millette v. Google et al.*, Case No. 24-cv-04708 (N.D. Cal. Aug. 2, 2024), Dkt. No. 15. OpenAI's section 1407 motion does not seek to centralize *Nvidia* nor the *Google* actions to which the *Millette* YouTube creator action is related.

III.    **ARGUMENT**

    A.    **Limited Informal Coordination Is Sufficient and Appropriate.**

"Centralization under Section 1407 should be the last solution after considered review of all other options." *In re: Baby Food Mktg., Sales Prac. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021). "These options include transfer pursuant to 28 U.S.C. § 1404, as well as voluntary cooperation and coordination among the parties and the involved courts." *In re Comcast Corp. Emp. Wage & Hour Emp. Pracs. Litig.*, 190 F. Supp. 3d 1344 (J.P.M.L. 2016). Where practicable, "voluntary coordination" is "preferable to centralization." *In re Uber Techs., Inc., Wage & Hour Emp. Pracs.*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016).

Setting aside the recently filed DMCA and *Millette* cases, coordination between the balance of proceedings is ongoing and entirely practicable. All but *one* of these cases (*In re ChatGPT*) are before Magistrate Judge Wang for discovery, who has been conducting joint discovery conferences. *See e.g., NYT* Dkt. No. 162; *Authors Guild* Dkt. No. 177; *Authors Guild* Dkt. No. 288; *Authors Guild* Dkt. No. 202. Discovery has been moving apace (*supra* Factual and Procedural Background) and the case schedules are aligned. The Magistrate Judge overseeing discovery in *In re ChatGPT*, Judge Illman, is supportive of coordination and issued a directive that "all counsel" should confer on ways that the "discovery process (and depositions in particular) in [the NY and CA] cases may be streamlined and made efficient." *In re ChatGPT*, Dkt. 144 at 3. OpenAI's contention that Judge Wang issued guidance "inconsistent" (Mot. at 2) with this directive is unsupported and inaccurate. Judge Wang herself encouraged the parties to coordinate by cross-producing documents and testimony.  Geman Decl. Ex. B at 7:13-16 ("And that brings me to my general principles that I want to talk about today. I am all in favor of cross production of documents, of sharing or cross production of testimony for efficiency purposes."). Judge Wang, like Judge Stein, is directly communicating with Judge Olguin-Martinez, the

District Court Judge in the Northern District of California, to coordinate proceedings. Geman Decl. Ex. A at 4:15-19; 8:21-25. Judge Olguin-Martinez emphasized this coordinated effort to the parties in the *In re ChatGPT* proceeding, explaining:

> I spoke with Judge Wang. Neither she nor I nor Judge Stein nor -- none of us have any interest in having you all play these cases off each other, so -- which, at this point, looks like exactly what you're doing.

*Id.* at 8:21-25.

There is every reason to believe that the Judges across proceedings will work cooperatively to coordinate as appropriate. *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F. Supp. 242, 243 (J.P.M.L. 1976) ("In deciding whether the overall expenditure of judicial energies will be minimized by transfer, the possibility of cooperation among the judges to whom the constituent actions are assigned must be evaluated as an alternative.").

Moreover, the attorneys for the parties make coordination more feasible. OpenAI's counsel is the same across each of these proceedings. *See In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380 (J.P.M.L. 2014) (noting that, among other things, national defense counsel makes "informal cooperation among the involved attorneys [] both practicable and preferable to centralization.""). Further, the plaintiffs' attorneys are also working together to maximize efficiency. Plaintiffs counsel for the *Authors Guild* action (Lieff Cabraser and Cowan DeBaets) are co-counsel in a similar litigation with the attorneys representing the plaintiffs in *In re ChatGPT*. Geman Decl. ¶ 6. Given the relatively small number of cases, counsel, and Judges involved in pretrial proceedings, coordination is entirely practicable. *See e.g. In re Range View Mgmt., LLC Tel. Consumer Prot. ACT (TCPA) Litig.*, No. MDL No. 3123, 2024 WL 4429361 (J.P.M.L. Oct. 4, 2024) ("the limited number of involved parties and the pendency of actions in only four districts, three of which are adjacent, suggest

that alternatives to centralization, such as informal coordination, are practicable"); *In re Dollar Tree Stores Inc., FLSA and Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) ("The Panel is convinced that cooperation among the parties and deference among the courts can easily minimize the possibilities of duplicative discovery or inconsistent pretrial rulings in the actions now before the Panel").

The recently filed DMCA cases (*Raw Story* and *The Intercept*) and the *Millette* YouTube creator action do not change this calculus. Neither the *Raw Story* nor *The Intercept* involve copyright infringement claims, which are the core claims at issue in the *In re ChatGPT*, News, and *Authors Guild* actions. This is precisely why Judge Stein declined to relate the DMCA actions with the *Authors Guild* and *News* actions in the first place. As for the *Millette* YouTube creator action, this action has been related to—and is being coordinated with—two other cases alleging claims on behalf of YouTube creators against other AI companies (Google and Nvidia).

### B.    OpenAI Cannot Seek Centralization Under the January 2024 Stipulation, Which Confirms Why Centralization Is Inappropriate.

As noted above, on January 22, 2024, the parties entered a stipulation wherein, in exchange for—*inter alia*—Plaintiffs' agreement to brief summary judgement motions ahead of class certification, OpenAI and Microsoft agreed not to seek a transfer of the *Authors Guild* action under Section 1404 or to move to dismiss under the first-to-file rule. *Authors Guild*, Dkt. No. 56. OpenAI and Microsoft also agreed not to seek a Section 1407 transfer of the *Authors Guild* actions unless "additional cases are filed raising similar claims on behalf of individual plaintiffs or proposed classes that overlap, either partially or completely, with the classes proposed in the operative Complaints." *Id.*. OpenAI contends that the filing of the *Raw Story*, *Intercept*, *Millette*, *Daily News*, and *CIR* cases satisfied this condition.

This is false. Of these five cases, two of them—the *Daily News* and *CIR*—have been consolidated with the *New York Times* action, which was pending at the time of the January 2024 stipulation. The remaining three cases are entirely unrelated. The *Raw Story* and *The Intercept* actions are individual actions—not class actions—raising dissimilar claims (DMCA claims versus copyright infringement) on behalf of news entities that are not members of the *Authors Guild* class.[4] Similarly, the *Millette* plaintiffs seek to represent a proposed class that does not "overlap, either partially or completely" with the *Authors Guild*'s proposed class, as it only includes uploaders of or owners of copyrights in *YouTube videos*, whereas the *Authors Guild* proposed class includes owners of copyrights in fiction and nonfiction literary works.[5] Because the sole exception to the January 2024 stipulation has not been satisfied, OpenAI is barred under the stipulation from seeking centralization under Section 1407. *See, e.g., Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 14 (S.D.N.Y. 2019) (explaining that a stipulation is "generally binding on the parties and the Court."). OpenAI's violation of the stipulation is dispositive.

Rather than attempt to justify its violation of its stipulation and order, OpenAI asserts that it "now moves for centralization" because of an inability to negotiate a deposition coordination order in the *Authors Guild*, News and *In re ChatGPT* actions. Mot. at 12; *see also* Mot. at 1-2; 10-11; 15-16; 18. However, this circumstance was of OpenAI's own choosing. As Judge Olguin-Martinez explained:

> Defendants did not want these two cases brought together in this

---

[4] The proposed class in the *Authors Guild* action is limited to *natural* persons, literary estates, and literary trusts that own copyrights in fiction or nonfiction books used to train the Defendants' large language models. *Authors Guild* Dkt. 69, ¶¶ 393-98.

[5] The *Millette* classes are limited to persons "who uploaded any **YouTube video**" or "whose registered copyright material within any **YouTube video** was transcribed and then used as training data for the OpenAI Language Models without their consent." *Milette* Dkt. 47 ¶¶ 32-33.

> district, right? Defendants chose not to have the New York case
> brought here under first to file. So I don't want to hear that you're
> having trouble now dealing with discovery in two cases because
> you chose that.

Geman Decl., Ex. A at 5:8-14.

Further, any failure to negotiate a deposition coordination order (if it is a failure) is also of OpenAI's making. At OpenAI's insistence, plaintiffs agreed to negotiate formal coordination of depositions, but reiterated their request for the cross-production of documents to facilitate examinations useful across proceedings. Geman Decl., ¶ 7. OpenAI played hardball: demanding that all plaintiffs agree to rely on one deposition of each witness, but without access to the same materials for that examination. *Id*. Plaintiffs could not agree to this approach and the Court declined to order it. Now, with its discovery tactics rejected at the bargaining table and in the courthouse, OpenAI claims that centralization is its "only viable means" of "cross-district coordination." Mot. at 15. Not so. OpenAI could have agreed to a deposition protocol, but refused and managed to delay depositions in both the *In re ChatGPT* and *Authors Guild* actions for more than six months as a result. OpenAI has had serial opportunities to coordinate the New York actions with the *In re ChatGPT* actions, yet it decided not to file a Section 1404 motion, decided not to coordinate document discovery between the two sets of actions, and demanded unreasonable concessions for deposition coordination. As Judge Martinez-Olguin stated, OpenAI had used the January 2024 stipulation to "play the cases off" each other and create delay. Now, with discovery in these cases closing in, OpenAI cannot abandon its agreement in favor of centralizing with cases at the pleading stage.

*       *       *

The Panel rarely grants motions to transfer under 28 U.S.C. § 1407 when the party seeking centralization has made no effort to coordinate under 28 U.S.C. § 1404. *See, e.g., In re*

*Athena Universal Life II Cost of Ins. Increase Litig.*, 268 F. Supp. 3d 1354 (J.P.M.L. 2017) ("[C]entralization under Section 1407 should be the last solution after considered review of all other options.") (citation omitted). It is even rarer—and likely unprecedented— to centralize actions under Rule 1407 after a defendant strategically chose to *waive its right* to exercise other options. That is the case here, and reason alone to deny OpenAI's motion.

### C.  The Litigations Do Not Otherwise Satisfy the Section 1407 Standard.

Under 28 U.S.C. §1407, a party moving for centralization bears the burden of showing that (1) the actions involve "common questions of fact" that are numerous and complex, (2) centralization would benefit "the convenience of the parties and witnesses," and (3) centralization would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. "Where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Range View Mgmt.*, 2024 WL 4429361, at *1. OpenAI has failed to meet its burden.

### 1.  Centralization will not promote efficiency.

It is inefficient and generally inappropriate to centralize actions that are in significantly different stages of proceedings. *See e.g.*, *In re Bernzomatic & Worthington Branded Handheld Torch Prods. Liab. Litig.*, 293 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018) (considering the procedurally advanced nature of several cases as a factor that militates against centralization); *In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (same).

Here, OpenAI seeks to centralize the procedurally advanced News, *Authors Guild*, and *In re ChatGPT* litigations—which are well into discovery—with cases (*Raw Story*, *Millette* and *The Intercept*) where discovery has not started and (in the cases of *Millette* and *Raw Story*) the pleadings are not yet set. *See Raw Story* Dkt. No. 117; *Millette* Dkt. No. 55; *Intercept* Dkt. No.

122. In the *Authors Guild* case alone, the parties have briefed over a dozen discovery motions, produced over 150,000 documents, and conferred on countless discovery requests. Geman Decl., ¶ 3. The *Authors Guild* plaintiffs have conducted extensive training data and source code inspections, have been seeking to depose OpenAI's corporate representative for over *six months* and anticipate commencing depositions within weeks of this writing. *Id.* ¶ 3, 4. The News and *In re ChatGPT* cases have made similar progress and all three proceedings are scheduled to complete fact discovery on or before April 30, 2025. Centralizing these advanced cases with a set of new (and unrelated, *see infra* Factual and Procedural Background) cases contravenes the objectives of Section 1407. *See In re Reglan/Metoclopramide Prods. Liab. Litig.*, 622 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) (denying centralization as unwarranted where "several of the actions appear to be substantially advanced").

OpenAI contends that the new cases are in a "sufficiently similar procedural posture" and that any "modest differences" should not alter the 1407 analysis. Mot. at 19.  But the procedural disparities are glaring. Currently, the hearing on the pending motion to dismiss the *Millette* complaint is set for May 15, 2025—two weeks *after* the close of discovery in the *Authors Guild*, *In re ChatGPT* and News cases. *Millette* Dkt. No. 55. Meanwhile, the *Raw Story* action was dismissed—in its entirety—and the court denied without prejudice the *Raw Story* plaintiffs' motion for leave to replead their claims. *Raw Story* Dkt. No. 117.  It is unclear when or if that case will proceed. Arguably, *The Intercept*—with pleadings set—is the most advanced of the three cases, but due to a stay, has not started discovery and it is unclear when that will change. Centralizing these cases will delay resolution of the advanced cases. For this reason alone, OpenAI's motion should be denied. *See e.g., In re JumpSport, Inc. ('845 & '207) Pat. Litig.*, 338 F. Supp. 3d 1356 (J.P.M.L 2018) (denying centralization, noting that "procedural disparity would

complicate any centralized proceeding and likely would result in delays to the completion of discovery and the anticipated trial date in [procedurally advanced cases].").

### 2. The cases are factually distinct, as other courts have recognized.

Centralization is appropriate only where the cases share "common questions of fact" that are "sufficiently complex and/or numerous to justify Section 1407 transfer." *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 703 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010). The Panel generally denies petitions where "individualized facts . . . will predominate over the common factual issues alleged by plaintiffs." *In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013). Here, there are no core and complex questions common to the litigations.

### a. *The core fact questions differ.*

OpenAI seeks a centralization order that would contradict multiple district court determinations that these varied cases are not related. In particular, OpenAI seeks to lump the DMCA cases in with the copyright infringement actions (the *In re ChatGPT, Authors Guild*, and *News actions*). But the district courts got it right and these DMCA cases are distinct from the copyright cases. The *Intercept* and *Raw Story* plaintiffs exclusively assert claims under 17 U.S.C. 1202(b)(1), which restricts the removal or alteration of CMI. To prevail, these plaintiffs must show that OpenAI intentionally removed or altered CMI in their copyrighted works. *See e.g. Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1053 (N.D. Cal. 2023). The fact questions of whether (1) OpenAI altered CMI; or (2) possessed the requisite scienter when it did so, are distinct from copyright infringement questions. Judge Stein already rejected an attempt to relate these actions to the *News* cases. Indeed, Judge Rakoff refused to even relate *Raw Story* and *Intercept* to *each other*. These cases involve different claims, different intellectual property, individualized fact questions, and will require different discovery. The Panel rejects coordination

of actions that require this sort of differentiated analysis, even where one party is common to the actions. *In re Move Artwork Copyright Litig.*, 473 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) (denying centralization of "four actions involv[ing] defendants' alleged infringement of different copyrights" explaining that "[n]o common intellectual property is at issue" and that the "asserted common factual questions identified by defendants appear to be either simply a generic listing of elements found in virtually every copyright and trademark infringement action…").

        **b.**    ***OpenAI fails to identify any unusually complex common fact questions.***

Where, as here, there is a small number of Cases, "transfer under § 1407 is inappropriate unless it involves exceptional cases sharing unusually complex questions of fact." *In re Iowa Beef Packers, Inc.*, 309 F. Supp. 1259, 1260 (J.P.M.L. 1970); *see also In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023) (declining to centralize "only six actions . . . which are pending in only two districts" explaining "[w]here only a minimal number of actions are involved, the proponent of centralization bears a heavier burden"); *In re: Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368 (J.P.M.L. 2012) (same for "only seven actions []currently pending in two districts").

OpenAI relies on the technical complexity of its LLMs (untethered to any specific argument) and its intent to rely on a common fair use defense. Mot. at 13. This argument fails for multiple reasons.

First, even if OpenAI were correct that fair use was a pure legal issue (versus a mixed question of law and fact), "[s]eeking a uniform legal determination . . . generally is not a sufficient basis for centralization." *In re SFPP, L.P., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015); *see also In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (avoiding more than one federal court "having to decide the

same issue is, by itself, not sufficient to justify Section 1407 centralization"). And, even if avoiding multiple district court determinations were a proper rationale, centralization of these cases will not accomplish it. Regardless of The Panel's decision here, other district courts will rule on similar issues in connection with pending copyright cases brought against other LLM providers. *See e.g.*, *Kadrey et al., v. Meta Platforms, Inc.*, Case No. 23-cv-03417 (N.D. Cal. Jul. 7, 2024), *Bartz, et al., v. Anthropic PBC*, Case No. 24-cv-05417 (N.D. Cal. Aug. 19, 2024).

Second, to the extent OpenAI alternatively contends that its fair use defense will be determined by underlying fact questions, it fails to explain what those fact questions are, or *why* they are "unusually complex." *See In re Time Warner Cable, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 247 F. Supp. 3d 1388, 1389 (J.P.M.L. 2016) (holding proponent of centralization failed to meet its burden where there were "relatively few actions at issue in this litigation, pending in only two districts, and the factual issues presented are neither particularly complex nor numerous."); *In re Range View Mgmt,* 2024 WL 4429361, at *1 (similar); *cf. In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1357 (J.P.M.L. 2019) (parties agreed that there were many overlapping fact questions related to whether defendant's product advertisements were false).

### D.   If Centralization Were Appropriate, the Southern District of New York Is the Most Suitable Forum.

If centralization were otherwise appropriate, which it is not, the Northern District of California and the Southern District of New York are both logical choices. However, in this case, SDNY is the most appropriate forum. The majority of the total actions and a majority of the most procedurally advanced actions are located in the SDNY and Magistrate Judge Ona Wang has already developed a deep familiarity with the technological issues and overseen extensive motion practice.

OpenAI's reliance on the relatively lower median time period for resolution of motions/cases in Northern District of California is misplaced. Mot. at 20. Small discrepancies in docket level statistics—across all cases—is not evidence of a district's superior ability to manage an MDL. The Judges of the Southern District of New York bench have the skill and experience to effectively manage a centralized proceeding just as well as the judges of the Northern District of California.

**IV.  <u>CONCLUSION</u>**

For the foregoing reasons, the *Authors Guild* Plaintiffs respectfully submit that the Panel should deny OpenAI's motion without argument.

Dated:  January 3, 2025                    Respectfully submitted,

                                           */s/ Rachel Geman*
                                           Rachel Geman
                                           Wesley Dozier
                                           Anna Freymann
                                           **LIEFF CABRASER HEIMANN**
                                           **& BERNSTEIN, LLP**
                                           250 Hudson Street, 8th Floor
                                           New York, New York 10013-1413
                                           Telephone: (212) 355-9500
                                           rgeman@lchb.com
                                           wdozier@lchb.com
                                           afreymann@lchb.com

                                           Reilly T. Stoler
                                           **LIEFF CABRASER HEIMANN**
                                           **& BERNSTEIN, LLP**
                                           275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
                                           Telephone: (415) 956-1000
                                           rstoler@lchb.com

                                           Justin A. Nelson
                                           Alejandra C. Salinas
                                           **SUSMAN GODFREY L.L.P**
                                           1000 Louisiana Street, Suite 5100
                                           Houston, TX 77002-5096
                                           Telephone: (713) 651-9366
                                           jnelson@susmangodfrey.com
                                           asalinas@susmangodfrey.com

                                           Rohit D. Nath
                                           **SUSMAN GODFREY L.L.P**
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067-2906
                                           Telephone: (310) 789-3100
                                           RNath@susmangodfrey.com

                                           Jordan W. Connors
                                           **SUSMAN GODFREY L.L.P**
                                           401 Union Street, Suite 3000
                                           Seattle, WA 98101
                                           Telephone: (206) 516-3880
                                           jconnors@susmangodfrey.com

- 21 -

J. Craig Smyser
Charlotte Lepic
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
clepic@susmangodfrey.com

Scott J. Sholder
CeCe M. Cole
**COWAN DEBAETS ABRAHAMS & SHEPPARD
LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
ssholder@cdas.com
ccole@cdas.com

Counsel for *Authors Guild* Plaintiffs

3154605.6